## WILLIS *vs.* THE LONG ISLAND RAIL ROAD COMPANY.

The extent and the measure of the duties and the responsibilities of a carrier of passengers and the passenger are quite different. The carrier is bound to the exercise of all possible skill, foresight and care. The passenger is bound to conduct himself with due and ordinary prudence, such as a careful man would use under the circumstances. He is not required to foresee unexpected dangers, nor to speculate upon risks, but he is obliged not to expose himself to danger which is known or may be looked for, in a manner inconsistent with ordinary caution. *Per* EMOTT, J.

It is not conclusive evidence that a person is negligent of his safety in assuming

Willis *v.* Long Island Rail Road Co.

a particular position, that, had he not been in that place or in that position, he would not have been injured. *Per* EMOTT, J.

It is not negligence in a passenger to occupy a position which will involve increased risk to him of the consequences of negligence and misconduct of the carrier.

A passenger neglects his duty when he does not guard against the risks which he knows to be ordinarily incident to the mode of travel which he employs; but he cannot be charged with such a neglect for omitting to provide against the possible consequences of the misconduct of the carrier.

The fact that a passenger upon a rail road is standing upon the platform of a car when he receives an injury by means of a collision of cars, occasioned by the negligence of the rail road company or its agents, will not, of itself, independent of the provisions of the general rail road act of 1850, bar his recovery of damages for the injury sustained.

The 46th section of the general rail road act applies to a case where, although the casualty resulted from serious neglect of their duty by the rail road company, yet it proved dangerous or injurious only to those who were exposed by being upon the platform of the car in violation of the printed regulations of the company.

The " proper accommodation" which, by that section, rail road companies are required to furnish to passengers, implies not only space enough, within the cars, to contain the passengers, but also the means of sitting, in the usual manner, during the journey.

A rail road company, to entitle itself to the protection of the statute, in case of injury to a passenger while upon the platform, is bound to show that it furnished not only room in the cars, but *seats.* If there are no vacant seats, a passenger is not chargeable with fault, nor exposed to the statute, for remaining on the platform.

The fact that there are no vacant seats in the car which a passenger enters, will not justify him in going upon the platform, provided there are accommodations in the other cars of the train, and there is sufficient time and opportunity for the passenger to go where there are seats, before the train starts.

But a passenger is not bound to go from one car to another, in search of a seat, after the train has started.

Neither is a passenger bound to require a person occupying an entire seat to make room for him, nor to displace him so as to obtain a seat, though the seat be large enough for two persons to occupy when sitting properly.

Nor is it the duty of a passenger, with reference to the requirements of the general rail road act, to require persons to displace articles which they have placed upon a seat, in order that he may be seated.

Rail road companies are bound to furnish the accommodations mentioned in the statute—the room and the seats—and not merely to furnish passengers with the means of obtaining them.

They have a right to make regulations as to the use of the seats, and the

power to enforce them, and it is the duty of their servants and agents to provide seats for passengers, without waiting for any application from the latter.

APPEAL from an order made at a special term, denying a motion on the part of the defendants to set aside a verdict, and for a new trial. The plaintiff, by his complaint, sought to charge the defendant, in damages, for injuries sustained by him while riding upon the cars of the defendants; and also for loss of his son's services, &c. occasioned by injuries to his son at the same time, and by the same accident. The plaintiff and his son, Benjamin Willis, (a minor,) were passengers on a train of cars on the defendants' road, in September, 1857. They got upon the train at Hempstead Branch, after it had started from the depot, and upon the *front* platform of the *first* passenger car. It was a long train, comprising tender, baggage-car, and six passenger cars. The plaintiff and his son passed into the first car, went about *half way* through it, saw no vacant seats, then returned to the front platform of the car. There were vacant seats in the car, also plenty of standing room. There were also vacant seats in the other cars. There were six passenger cars. Each car would seat from 60 to 62 or 64 passengers. There were only 209 passengers on the train besides a military company, which numbered 36 or 37—in all 245 or 246. Some seats were occupied by light baggage, belonging to the passengers, and in a few instances two seats were occupied by one person. The train was about on its regular time, and remained at Hempstead Branch station the usual time. Soon after leaving Hempstead Branch the engine and baggage-car were thrown from the track. The *first* passenger car was partially broken. No other cars were injured. The accident was caused by poles lying across the track. The engineer's view of the obstruction was intercepted by laborers on the track until too late to avoid the accident. As soon as the obstruction was discovered a signal to brake up was given, the brakes were applied, the engine reversed, the speed of the

train very much checked, and the concussion caused by the accident was very slight. At the time of the accident the plaintiff was standing on the front platform of the first passenger car, and his son just inside the door opening upon the platform. No persons except plaintiff and his son were injured. Notices like the following were posted in conspicuous places inside of each passenger car in the train : "Notice. Passengers are notified not to put their heads or arms out of the windows, and not to stand upon the platforms of the cars." The plaintiff had very frequently traveled over the defendants' road, and had seen the notices posted in the cars.

The defendant, by its answer, among other defenses, insisted that the carelessness and negligence of the plaintiff contributed to the injuries sustained by him; that at the time of the accident there were certain printed regulations of the company, posted up in the passenger cars, notifying passengers not to stand upon the platforms; that there was a sufficiency of seats for the accommodation of all the passengers; that in disregard of the said regulations and without the defendant's permission, the plaintiff stood upon the platform of the car, while the train was in motion, and was so standing thereon at the time of the accident; and the defendant claimed that by reason of the premises and under and by virtue of the general rail road act, (as amended,) they were not liable for any damages sustained by the plaintiff. The action was tried at the Queens county circuit, before a jury; who found a verdict in favor of the plaintiff, for $3100 damages.

*Weeks & De Forest,* for the appellant.

*W. H. Onderdonk,* for the plaintiff.

*By the Court,* EMOTT, J. There can be no serious question as to the negligence of the defendants in respect to the occurrence by which the plaintiff was injured. The engine and

baggage car of the train in which he was riding were thrown from the track by some poles or pieces of wood or timber which were lying upon the track, and which may fairly have been inferred to have fallen from a previous train, which had been in part loaded with such poles or sticks of timber. It was a question whether the engine driver could not, and ought not, to have seen this obstruction in time to have checked the train and prevented a collision with it. But if this were not so, it would not have required a very great or unusual exercise of care on the part of those having charge of the road and the trains, either to have prevented these things falling from a train while in motion, or to have replaced them if they did fall off; or to have removed them from the track; or to have discovered their presence and warned an approaching train in season to prevent any injurious consequences. A sufficient number of men upon the train from which the poles escaped, or a force of watchmen upon the track to examine and to keep it clear, would have sufficed to prevent the collision which injured the plaintiff. Such precautions, however expensive or onerous, are far from being beyond the reach of human skill and foresight, and that is the only limit of the duty of a carrier to provide for the safety of his passengers.

The principal question in the case is whether the plaintiff was guilty of negligence. The rule is that a plaintiff cannot recover for an injury which he has sustained in consequence of the negligence of a defendant, if his own negligence contributed to produce the injury. The court of appeals, in a very recent case, *Colegrove* v. *New York and New Haven and N. Y. and Harlem Rail Road Companies,* (20 *N. Y. Rep.* 492,) have intimated that they do not sanction a construction of this rule which requires that the negligence of the party injured, in order to excuse the carrier, must be such as to contribute to produce the collision which occasioned the injury. The judge who makes this intimation does not, however, explain what the court consider to be the true construction of the rule, and the effect of the decision or of the opinion

will not be, I apprehend, to remove any difficulty which may be presented by such cases. A contrary decision had generally been supposed to be involved in the affirmance of the judgment in *Carroll* v. *New York and New Haven Rail Road Co.* (1 *Duer*, 571.)

The extent and the measure of the duties and the responsibilities of the carrier and the passenger are quite different. The carrier is bound to the exercise of all possible skill, foresight and care. The passenger is bound to conduct himself with due and ordinary prudence, such as a careful man would use under the circumstances. He is not required to foresee unexpected dangers, nor to speculate upon risks, but he is obliged not to expose himself to danger which is known or may be looked for, in a manner inconsistent with ordinary caution.

In the present case the defendant was upon the platform of the car when the locomotive went off the track. The car upon which he was riding was brought in contact with the baggage car before it, and partly crushed. The plaintiff, who was on the platform, and his son who stood just within the door, were the only persons injured. It is extremely probable that if the plaintiff had not been upon the platform he would not have been injured; certainly he could not have been injured so seriously as he was. The judge left it to the jury to say whether it was negligence in the plaintiff under the facts disclosed, to stand or ride upon the platform. But the defendants contend that it was negligence as matter of law, or at least beyond dispute as a fact, for the plaintiff to ride upon the platform, and that for this reason he could not recover and should have been nonsuited. This proposition is rested not merely upon the statute, to which I shall refer presently. It is also contended that independent of the statute, the plaintiff could not recover for an injury which befell him under these circumstances.

It is not conclusive evidence that a person is negligent of his safety in assuming a particular position, that if he had

not been in that place or in that position he would not have been injured. That, as a general rule or proposition, would go too far. A collision may destroy a particular portion of a car, the middle or one end it may be, and only those occupying that portion will be injured. It might be said, in such a case, that if the passenger had not occupied the seat which he did, he would not have been injured. Yet no one would impute negligence to a person for occupying one seat more than another, although it may be as certain that he would have escaped uninjured if he had not occupied that seat, as it can be in this case that the plaintiff would not have been injured if he had not been standing on the platform.

The essential element of negligence, in such a case, is a disregard of some risk which the passenger ought to anticipate. If a man places himself in such a position that in the ordinary movement and conduct of the train he is exposed to danger, he may justly be said to be negligent of his security, and must take the consequences if he is injured. If he attempts to leave or to get in a train in motion; or if he places his limbs or his body where they may be crushed between two cars in their ordinary movement and jostle, and is hurt in consequence, he is guilty of a fault which is an essential cause, if not the only cause, of his injuries, and although the cars may have been carelessly started or carelessly run, it does not help his case.

If the plaintiff in this case had been thrown off the platform by a jerk or movement of the train, he would have encountered a danger incident to his position, and although the jerk might have been occasioned by high and unusual speed or other mismanagement, still, at the most, the fault would have been mutual. But he was injured by a collision between two cars of the train, resulting in the crushing of one of them, which was occasioned by the engine running off the track in consequence of the marked, if not gross negligence of the defendants or their agents. Now to say that it was negligence in the plaintiff to occupy a position in which he had reason

Willis *v.* Long Island Rail Road Co.

to fear that he would be more exposed to injury from such a cause, it is necessary to say that he was bound to foresee and to protect himself against such a danger. It is not negligence for a man to ride on a platform of a car because he is more likely to be injured there in case a collision occurs, unless he is under obligations to ride where he will be most safe in case a collision does occur. But I think a passenger is not bound to anticipate a collision, or that the train will be thrown from the track. He has a right to expect that he will be carried safely, that the carrier will discharge his duty, will provide a safe vehicle and an unobstructed track, and that the passengers will be exposed to no risk but those incident to that mode of travel. It is not in my judgment negligence in a passenger to occupy a position which will involve increased risk to him of the consequences of negligence and misconduct of the carrier. We might as well say that it is negligence for a man to stand or sit near a boiler on a steamboat, because in case the carelessness of the managers produces an explosion, he is more likely to be killed. A passenger neglects his duty when he does not guard against the risks which he knows to be ordinarily incident to the mode of travel which he employs, but he cannot be charged with such a neglect for omitting to provide against the possible consequences of the misconduct of the carrier.

I am therefore of opinion that the fact that the plaintiff was upon the platform of the car when he was injured does not of itself, independent of the statute which I will proceed to consider, bar his recovery of damages for his injuries.

Section 46 of the general rail road act, (*Laws of* 1850, *ch.* 140,) provides that " in case any passenger shall be injured while on the platform of any car in violation of the printed regulations of the company posted up at the time in a conspicuous place, inside of its passenger cars then in the train, such company shall not be liable for the injury, provided the said company at the time furnished room inside its passenger cars sufficient for the proper accommodation of its passengers."

It was proved that the defendants had printed regulations, forbidding passengers to stand on the platform, posted up in the cars on this train. I think the statute was intended to reach all cases of injuries, whether occasioned by great negligence of the carrier or otherwise, provided the injury was occasioned or increased by the exposed position which the passenger occupied. At all events it must, I think, apply to a case like the present, where although the casualty resulted from serious neglect of their duty by the defendants, yet it proved dangerous or injurious only to those who were exposed as the plaintiff and his son.

The question upon this part of the case is whether the defendants furnished " sufficient accommodation" within " the cars" according to the meaning of the statute. Accommodation means more than room. Sufficient accommodation means room enough to receive the passengers, together with a supply of the conveniences requisite for their comfort, customary in the particular mode of travel. In the case of rail road cars it implies not only space enough within the cars to contain the passengers, but also the means of sitting in the usual manner during the journey.

The judge charged the jury at the trial, substantially, that in order to entitle themselves to the protection of the statute, it was incumbent upon the defendants to furnish not only room in the cars, but seats, and that if there were no vacant seats the plaintiff was not chargeable with fault, nor exposed to the statute, for remaining on the platform. I think this is the true construction of the statute, and that the instruction given to the jury upon this point was correct.

It was contended that although the first car of the train into which the plaintiff and his son entered was full, yet there were vacant seats in other cars which they might and ought to have taken. The evidence went to show, and the jury had a right to believe, that the train made a short stoppage at the station where the plaintiff got upon it, and that he was obliged to make some exertions to get his lug-

Willis *v.* Long Island Rail Road Co.

gage upon the train, and get in the cars himself before they left the station. There was no evidence that any one connected with the train or the road pointed out either car in particular to the plaintiff, and I see no foundation for the proposition that he should have known or believed that this car would be full, and should have ascended some other car, and that therefore the defendants were not bound to furnish accommodations in that car. The premises are not true, and the conclusion does not follow from them. Nor does the plaintiff's getting upon this car while it was in motion, affect in any way the present question. He was not prevented from finding a seat by getting upon the train while it was in motion. If he did so it was because he was unable to have his luggage secured before the train started. The plaintiff's injuries or their occasion had nothing to do with the time or the manner of his getting on the train. There was but one point of view in which these facts were material, and the law upon that point was correctly laid down by the court. The judge said to the jury that if the plaintiff and his son had sufficient time after they entered the first car, if they found no seats there, to go through the other cars and obtain seats, the plaintiff should not recover. That if there were accommodations in the other cars, and there were sufficient time and opportunity for the plaintiff to go there before the train started, he had no right on the platform. But he was not bound to go from one car to another after the train had started. This instruction was correct upon all the points which it embraced, and was all to which the defendants were entitled.

The points which have now been adverted to are sufficient to dispose of all the exceptions in the case which require to be noticed, except one upon a question of evidence, and certain exceptions to the charge, which present a question as to the respective duty of the plaintiff and the defendant's employees, in regard to seats intended for two persons which were occupied by one, and seats which were filled with luggage.

As to the evidence which was objected to, it is sufficient to

say that the witness's attention was called distinctly to the time and place at which he made the statement about which he was interrogated, and the person who heard it. The witness who swore to the statement did not personally remember and indentify the engine driver who made it. He had no acquaintance with him, but he stated positively that the statement which he heard, and was asked to repeat, was made by the person in charge of the engine, and the proof was undisputed that this was the witness Casey.

There was evidence given by the defendants that in the car which the plaintiff entered, there was one seat occupied by a person reclining in such a manner as to prevent any other sitting upon it, unless he was removed or made to change his position. There was also evidence that another seat not occupied by passengers, was filled with articles belonging to two persons who sat upon an adjoining seat. The judge told the jury in reference to these seats, that the plaintiff was not bound to require a person occupying an entire seat to make room for him, nor to displace him so as to obtain a seat, though the seat were large enough for two persons to occupy when sitting properly. He also said that it was not the duty of a passenger, with reference to the statute to which I have referred, to require persons to displace articles which they have placed on a seat, that he might be seated. To this the defendants excepted. They afterwards requested the judge to charge that a passenger who finds seats occupied by baggage or other articles of other passengers, which prevent him from taking part of it, should, if there be no other vacant seats, apply either to the passengers so encumbering the seats with baggage, or to the conductor to have them removed. The judge declined so to charge and the defendants excepted.

It will be remembered that the question to which this evidence and these instructions are to apply, is upon the duty of the defendants, not that of the plaintiff. The question is not precisely whether the plaintiff was guilty of negligence,

Willis *v.* Long Island Rail Road Co.

but whether the defendants furnished sufficient accommodations in their car for his use. At common law, and independent of this statute, as we have seen, the plaintiff was not in fault, and could have recovered damages for his injuries under the circumstances of this collision, notwithstanding he was upon the platform of the cars. The statute interposes an obstacle to his recovery because he was upon the platform, if the defendants had provided proper accommodations for him in the cars. This statute is for their benefit, and they must bring themselves strictly within it. They are to furnish the accommodations, the room and the seats, and not merely to furnish passengers with the means of obtaining them. They have the control of the cars, their construction and their use. They may and do make regulations as to the use of the seats, the number of persons who may occupy them, and their use for articles of baggage, and whether such articles shall be permitted in passenger cars, or must be placed in the baggage car. They have conductors and servants upon the train to enforce these regulations, and to provide seats for passengers. The conductor of this train passed the plaintiff and his son, saw where they were standing and received their fare, a short time before the collision occurred. He knew or ought to have known the condition of these seats, and it was his duty to have cleared them, if they were improperly occupied, and to have provided seats for persons who were standing either within or without the car. It was his duty and that of his assistants, if he had any, to do this for the comfort and convenience of the passengers, as well as to comply with the statute, which was to protect the defendants in case of a collision or other damage to the train. It was not a compliance with the statute that the defendants would have provided a seat for the plaintiff if they had been requested to do so. They were bound to furnish seats without request, and as a part of their duty. They were not to be passive until requested to act, but an active duty rested upon them. If they had rules which required that these seats

should be vacated they should have enforced them, and made room for the plaintiff, so that he could see that he could be seated. The duty rested upon them absolutely to furnish suitable accommodations, and the plaintiff was not called upon to set them in motion to do their duty.

It may be added that the proposition asked for by the defendants went too far. As an abstract or general proposition it is liable to the objection that the conductor might not be in the car, or the passenger might not have an opportunity of applying to him. In reference to the special facts disclosed in this case, it will be seen that the conductor passed the plaintiff, received his fare, and must have noticed, if he was not bound to know, not only that the plaintiff was on the platform, but that it was in his power to furnish him seats within the car.

We think the true rule upon this point is what has now been indicated, and therefore that the judge's rulings were correct.

The order denying a new trial must be affirmed with costs.

[ORANGE GENERAL TERM, September 10, 1860. *Lott, Emott* and *Brown,* Justices.]