GEORGE W. LOOP and RICHARD BENNETT, Administrators,
&c., of JEREMIAH LOOP, deceased, Appellants, *v.* LYMAN
LITCHFIELD and DUANDLER F. MOORE, Respondents.

The vendor of an article of his own manufacture is not liable to one who
uses the same, with the consent of the purchaser, for injuries resulting
from a defect therein, unless such article is, in its nature, imminently dan-
gerous.

The defendants sold a balance wheel, manufactured for sale by them, to C.,
who purchased it for his own use in a machine for sawing wood by horse-
power. There was a hole in the rim of the wheel, caused by shrinkage
in casting, which weakened it. This defect was visible, and C.'s atten-
tion was called to it before he purchased. The defendants filled this
cavity with lead, secured by a bolt, to receive which a hole was drilled
through the rim, still further weakening the wheel, and it was then
painted over, and by C.'s request, adjusted to the machine by the defend-
ants. After it had been in use over four years the wheel burst, parting
where it had been drilled to receive the bolt; and a fragment struck the
plaintiffs' intestate, who was using the machine with C.'s consent, with
such violence as to cause his death.—*Held*, in an action brought under
the statute for causing death by negligence, that the plaintiffs could not
recover.

(Argued March 23d, 1870; decided June 21st, 1870.)

APPEAL from a judgment of the General Term in the
fourth district, reversing a judgment entered upon a verdict
in favor of the plaintiffs, and ordering a new trial.

This action is brought under the act of 1847, chap. 450,
entitled "An act requiring compensation for causing death
by wrongful act, neglect or default," and was tried at the St.
Lawrence circuit, before Mr. Justice BOCKES and a jury, in
June, 1868.

The complaint alleged that in 1861 the defendants were
partners in manufacturing iron castings and machinery, and
made a cast-iron balance wheel to be used with a circular
saw. That the balance wheel had a large hole in its rim,
occasioned by negligence in casting it, by which its thickness
and strength were diminished, and by defendants' wrongful
act this hole was concealed by filling it with lead and finish-

ing the surface of the rim so as to resemble a sound wheel. The strength of the rim was further diminished by boring through it, so as to insert a rivet to hold the lead in the hole, and by the wrongful act of defendants they sold this wheel to Leverett Collister as a sound wheel and fit for use. That in 1864 Collister leased to Jeremiah Loop a frame for a circular wood saw, to be used with a circular saw for the purpose of sawing wood, to the arbor shaft on which frame said balance wheel was attached. That Loop put a saw on the arbor, and used the saw, balance wheel and frame in sawing wood for himself and Collister and for others, without knowledge of the hole in the rim of the balance wheel, and in the belief that it was a sound balance wheel and fit for use. That in October, 1866, Loop was so using the saw and balance wheel attached in sawing wood for one Van Rensselaer Loop, in a careful and prudent manner, when the balance wheel burst in the hole in its rim and directly through the hole made to insert the rivet to hold the lead in its place. That such bursting was caused by said hole and boring in the rim, and that a fragment of the wheel when it burst hit Jeremiah Loop in his side and inflicted a mortal wound, of which he died on the 29th of October, 1866. That such death was occasioned by said wrongful act and negligence of defendants, and plaintiffs bring this action as his legal representatives, for the benefit of his widow and next of kin. There was a motion for a nonsuit at the close of the plaintiffs' evidence and also at the close of all the evidence in the case, on the ground, amongst others, that the plaintiffs had failed to make out a case entitling them to recover; and to the refusal of the court denying this motion, the defendants excepted. There was evidence tending to show that when the defendants sold the wheel to Collister they pointed out to him the defect in the rim of the wheel, and that lead was fastened in the hole by means of a rivet, and that Collister selected and purchased it with full knowledge of such defect, because it was lighter and cheaper than heavier balance wheels which the defendants were accustomed to put upon horse-power for sawing

wood, and after he was informed of that fact. The judge stated that the only question upon which counsel could go to the jury would be, whether, in the manufacture and sale of the balance wheel, the defendants were guilty of negligence, which negligence produced the injury complained of.

The defendants requested the court to charge, " that if the jury find from the evidence that the defendants notified Collister of the defects in the wheel before he purchased it, the plaintiffs are not entitled to recover." The court declined and the defendants excepted.

The defendants requested the court to charge, " that if the jury find from the evidence that the deceased, at the time he received the injury, was using the wheel without the assent of Collister, the plaintiffs cannot recover." The court declined and the defendants excepted.

The defendants requested the court to charge, " that unless the jury find from the evidence that the defendants manufactured the wheel for the purpose for which it was used, plaintiffs cannot recover." The court declined and the defendants excepted.

The court charged, " if they find from the evidence that the defendants made this defective wheel for use, and that it broke by reason of the defect, that defendants were liable for the defect to whoever used it." To this charge the defendants excepted.

The court further charged, " that the rule that an injured party, in an action for negligence, should be free from negligence, meant, that he should use such care as a person of ordinary prudence would use, and that he need not use greater care," also " that one by whose negligence or wrongful act the death of another is caused, is not exonerated by slight negligence on the part of the deceased, although if he had used the utmost possible care, the accident would not have happened." To each of these charges the defendants excepted separately.

The jury found a verdict for the plaintiff.

On appeal to the General Term, the judgment was reversed

and a new trial ordered, from which the plaintiffs appeal to this court, with the usual stipulation.

*Edward C. James,* for the appellants, argued : 1st. The cause having been tried by jury and no motion made for a new trial, neither the General Term nor the Court of Appeals can review the facts, citing *Parker* v. *Jarvis* (34 How., 254) ; *Sandford* v. *Eighth Av. R. R. Co.* (23 N. Y., 243) ; *Magee* v. *Osborn* (32 N. Y., 669) ; *Morrison* v. *N. Y. & N. H. R. R. Co.* (32 Barb., 568) ; *Morange* v. *Morris* (20 How., 257) ; Code, §§ 265, 348. 2d. The finding of the jury is conclusive and establishes that the defendants were guilty of negligence of a character imminently dangerous to human life, by reason of which the deceased was killed ; and the deceased was not guilty of negligence. (*Sheridan* v. *B. & N. R. R. Co.* 36 N. Y., 39 ; *Ernst* v. *H. R. R. Co.,* 35 N. Y., 9 ; *Inland* v. *O. R. R. Co.,* 13 N. Y., 533 ; *Keller* v. *N. Y. C. R. R. Co.,* 24 How., 172 ; *Bernhart* v. *R. & S. R. R. Co.,* 23 How., 166 ; *Warden* v. *Austed,* 51 Barb., 9 ; *Davenport* v. *Ruckman,* 37 N. Y., 571 ; *McIntyre* v. *N. Y. C. R. R. Co.,* 37 N. Y., 288–9 ; *Parker* v. *Jarvis, supra.*) 3d. Defendants' negligence being of this character they were liable to any person injured. (*Thomas* v. *Winchester,* 6 N. Y., 397 ; *Smith* v. *N. Y. & H. R. R. Co.,* 19 N. Y., 130 ; *Longmeid* v. *Holliday,* 6 L. & Eq., 562 ; *Cook* v. *Dry Dock Co.,* 1 Hilt., 436 ; *Godley* v. *Hagerty,* 20 Penn. R., 387 ; *Vandenburgh* v. *Truax,* 4 Den., 464 ; *Guille* v. *Swan,* 19 John., 381 ; *Scott* v. *Shepard,* 2 Wm. Black., 892 ; *Dixon* v. *Bell,* 5 M. & S., 198 ; *King* v. *Dixon,* 3 M. & S., 14, 15 ; *Bird* v. *Holbrook,* 4 Bing., 628 ; *Lynch* v. *Nurdin,* 41 Eng. C. L., 422.) 4th. Notice of the defect to the purchaser does not excuse the defendants. (*Sheridan* v. *B. & N. R. R. Co., supra ; Webster* v. *H. R. R. Co.,* 38 N. Y., 260 ; *Creed* v. *Hartsman,* 29 N. Y., 591.) 6th. There was no error in the charge or refusals to charge. As to the request to charge that plaintiffs could not recover, if deceased was using the wheel without consent of Collister, he cited *Lynch* v. *Nurdin, supra ; Munger* v

*Tonawanda R. R. Co.* (4 N. Y., 349); Shearman and Redfield on Negligence, § 38; *Loomis* v. *Terry* (17 Wend., 496); *Daley* v. *Norw., &c., R. Co.* (26 Conn., 591); *Brown* v. *Lynn* (31 Penn., 510); *Chapman* v. *Parlam* (3 S. D., 585); *Bird* v. *Holbrook* (15 Eng. C. L., 9); *Jay* v. *Whitfield* (3 B. & A., 308). As to the charge on the question of concurring negligence, he cited *Fero* v. *B. & S. L. R. R. Co.* (22 N. Y., 215–16); *McGrath* v. *H. R. R. Co.* (32 Barb., 144); *Willis* v. *L. I. R. R. Co.* (id., 398); *Wilds* v. *H. R. R. Co.* (33 Barb., 503). 7th. The refusal to nonsuit was correct; and 8th. If the defendants were servants of Collister in affixing the wheel to the machine, this would not excuse them. *Thomas* v. *Winchester, supra;* Jewett, J., *in Buffalo* v. *Holloway,* (7 N. Y., 496); and this point was not made in the pleadings, or on the trial, and will not be considered. (*Ingersoll* v. *Bostwick,* 22 N. Y., 425.)

*William H. Sawyer,* for the respondents, insisted that all the rulings on the trial were before the court for review, whether considered by the General Term or not. (*Parker* v. *Jervis,* 3 Keyes, 271, 4.) On the sale of a specific machine, already manufactured, which the purchaser applies to a particular use, without regard to its fitness therefor, the vendee takes all risks incident to the use of it. (Pars. on Cont., 470; Chitt. on Cont., 451; *Chanter* v. *Hopkins.* 4 Mees. & W., 391.) The sale of a defective machine, when the defect is pointed out to the purchaser, is not in itself unlawful, and it is the person assuming to use it with knowledge, who is responsible. (*Jetter* v. *N. Y. & H. R. R. Co.,* 2 Keyes, 154, 160, 161.) The vendor, in lawfully parting with his property and control, parts with his liability. (*Mayor of Albany* v. *Cunliff,* 2 Com., 171, 4, 180; *Stevens* v. *Armstrong,* 2 Seld., 435; *Dygert* v. *Schenck,* 23 Wend., 446; *Blunt* v. *Aiken,* 15 Wend., 522, 6; *Norton* v. *Wiswell,* 26 Barb., 626, 630; *Bailey* v. *Mayor of New York,* 3 Hill, 531; *Congrove* v. *Smith,* 18 N. Y., 81.) This action can be maintained only when it could have been by the person

injured, if death had not ensued. *Quinn* v. *Moore* (15 N. Y., 433); *Oldfield* v. *H. R. R. R. Co.* (4 Kern., 315, 6); and the refusal to charge that plaintiffs could not recover, if the deceased was using the wheel without Collister's consent, was error; for, in that case, his own wrong produced the injury, and the law imposed no duty upon the defendants as to him. (*Munger* v. *Tonawanda R. R. Co.*, 5 Den., 267, S. C; 4 N. Y., 360; *Terry* v. *N. Y. C. R. R. Co.*, 22 Barb., 578, 586; *Clark* v. *Sy. & Ut. R. R. Co.*, 11 Barb., 112; *Bush* v. *Brainard*, 1 Cow., 78.) The defect was visible, and Collister as much bound to judge of it as the defendants; and, as they were his servants in fitting up the wheel and adjusting it to the shaft, the act not being tortious *per se*, the principal is responsible, and not the servant. (*Thomas* v. *Winchester*, 2 Seld., 408; *Hegeman* v. *The West. R. R. Co.*, 3 Kern., 9, 31; Angel on Carriers, § 579; *Denny* v. *Manhattan Co.*, 2 Den., 115, S. C.; 5 Den., 639; *Chapman* v. *N. Y. C. R. R. Co.*, 33 N. Y., 369; Paley on Agency, 294, 5, 396–399; *Colvin* v. *Holbrook*, 2 Com., 126, 129.) The charge was erroneous in requiring the jury to estimate the preponderance of negligence, for or against the defendants. To entitle the party to recover, he must be free from all negligence; and the fact that death ensues does not change the rule. (*Johnson* v. *H. R. R. R. Co.*, 20 N. Y., 73; *Milton* v. *H. R. Steamb. Co.*, 37 N. Y., 212; *Owen* v. *H. R. R. R. Co.*, 35 N. Y., 516, 518; *Haley* v. *Earl*, 30 N. Y., 208–9; *Wild* v. *H. R. R. R. Co.*, 24 N. Y., 430; *Curran* v. *Warren Chem. & Man'g. Co.*, 36 N. Y., 153–5; *Button* v. *H. R. R. R. Co.*, 28 N. Y., 258–9.) Plaintiffs should have been nonsuited, because there was no privity of contract between the defendants and the deceased. (*Newson* v. *N. Y. C. R. R. Co.*, 29 N. Y., 383; *Cunliff* v. *Mayor*, *supra*; *Daniels* v. *Potter*, 4 Carr. & P., 262.) The wheel was safe when finished. (3 Black. Com., 166.) A wheel already constructed and purchased with knowledge of its defects, the buyer assumes all risks. (*Cunliff* v. *Mayor*, *supra*; *Congrove* v. *Morgan*, 5 Duer., 590.) There was no contradic-

tion as to these facts, and therefore no question for the jury. (*Calkins* v. *Burgess*, 44 Barb., 425 ; *Wild* v. *H. R. R. R. Co.*, 29 N. Y., 326–7.) The attempt to prove that this was a dangerous instrument failed, and could not have availed if successful, for it was not pleaded. (*Field* v. *Mayor of New York*, 2 Seld., 179, 189.) In all cases, where a recovery has been sustained against a party not immediately connected with the injury, the act was in itself unlawful, or recklessly dangerous. *Lynch* v. *Nurdin*, has not been followed in this State, or regarded as authority. (*Hartfield* v. *Roper*, 21 Wend., 615 ; *Munger* v. *Tonawanda R. R. Co., supra.*)

Hunt, J. A piece of machinery already made and on hand, having defects which weaken it, is sold by the manufacturer to one who buys it for his own use. The defects are pointed out to the purchaser and are fully understood by him. This piece of machinery is used by the buyer for five years, and is then taken into the possession of a neighbor, who uses it for his own purposes. While so in use, it flies apart by reason of its original defects, and the person using it is killed. Is the seller, upon this state of facts, liable to the representatives of the deceased party ? I omit at this stage of the inquiry the elements, that the deceased had no authority to use the machine; that he knew of the defects and that he did not exercise proper care in the management of the machine. Under the circumstances I have stated, does a liability exist, supposing that the use was careful, and that it was by permission of the owner of the machine?

To maintain this liability, the appellants rely upon the case of *Thomas* v. *Winchester* (6 N. Y., 2 Seld., 397). I . that case, the defendant was engaged in the manufacture and sale of vegetable extracts for medicinal purposes. The extracts were put up in jars with appropriate labels. The defendant sold the articles to Mr. Aspinwall, a druggist of New York. Aspinwall sold to Dr. Ford, a physician and druggist of Cazenovia, where the plaintiff resided. Mrs. Thomas, one of the plaintiffs, being ill, her physician prescribed for her a

dose of the extract of dandelion, which is a simple and harmless medicine.   The article furnished by Dr. Ford in response to this prescription was the extract of belladonna, a deadly poison.   The jar from which this medicine was taken was labelled " ½ *lb. dandelion, prepared by A. Gilbert*, 108 *John St., N. Y., Jar* 8 *oz.*," and thus labeled was sold to Dr. Ford.   He relied upon the label, believed the medicine to be dandelion, and sold and delivered it to the plaintiffs as such. Mrs. Thomas suffered a severe illness by reason of this mistake.   It was conceded by the counsel in that case and held by the court, that there was no privity of contract between Winchester and Thomas, and that there could be no recovery upon that ground.   The court illustrate the argument by the case of a wagon built by A, who sells it to B, who hires it to C, who, in consequence of negligence in the building, is overturned and injured.   C cannot recover against A, the builder. It is added : " Misfortune to third persons, not parties to the contract, would not be a natural and necessary consequence of the builder's negligence, and such negligence is not an act imminently dangerous to human life."   So, if a horse, defectively shod, is hired to another, and by reason of the negligent shoeing, the horse stumbles, the rider is thrown and injured, no action lies against the smith.   In these and numerous other cases put in the books, the answer to the action is, that there is no contract with the party injured, and no duty arising to him by the party guilty of negligence.   " But," the learned judge says " the case in hand stands on a different ground.   The defendant was a dealer in poisonous drugs. Gilbert was his agent in preparing them for market.   The death or great bodily harm of some person was the natural and almost inevitable consequence of the sale of belladonna by means of the false label."   " The defendant's neglect puts human life in imminent danger.   Can it be said that there was no duty on the part of the defendant to avoid the creation of that danger by the exercise of greater caution ?"

The appellants recognize the principle of this decision, and seek to bring their case within it, by asserting that the fly

wheel in question was a dangerous instrument. Poison is a dangerous subject. Gunpowder is the same. A torpedo is a dangerous instrument, as is a spring gun, a loaded rifle or the like. They are instruments and articles in their nature calculated to do injury to mankind, and generally intended to accomplish that purpose. They are essentially, and in their elements, instruments of danger. Not so, however, an iron wheel, a few feet in diameter and a few inches in thickness, although one part may be weaker than another. If the article is abused by too long use, or by applying too much weight or speed, an injury may occur, as it may from an ordinary carriage wheel, a wagon axle, or the common chair in which we sit. There is scarcely an object in art or nature, from which an injury may not occur under such circumstances. Yet they are not in their nature sources of danger, nor can they, with any regard to the accurate use of language, be called dangerous instruments. That an injury actually occurred by the breaking of a carriage axle, the failure of the carriage body, the falling to pieces of a chair or sofa, or the bursting of a fly wheel, does not in the least alter its character.

It is suggested that it is no more dangerous or illegal to label a deadly poison as a harmless medicine than to conceal a defect in a machine and paint it over so that it will appear sound. Waiving the point that there was no concealment, but the defect was fully explained to the purchaser, I answer, that the decision in *Thomas* v. *Winchester* was based upon the idea that the negligent sale of poisons is both at common law and by statute an indictable offence. If the act in that case had been done by the defendant instead of his agent, and the death of Mrs. Thomas had ensued, the defendant would have been guilty of manslaughter, as held by the court. The injury in that case was a natural result of the act. It was just what was to have been expected from putting falsely labeled poisons in the market, to be used by whoever should need the true articles. It was in its nature an act imminently dangerous to the lives of others. Not so here. The bursting of the wheel and the injury to human life was not the natural

result or the expected consequence of the manufacture and sale of the wheel. Every use of the counterfeit medicines would be necessarily injurious, while this wheel was in fact used with safety for five years.

It is said that the verdict of the jury established the fact that this wheel was a dangerous instrument. I do not see how this can be, when there is no such allegation in the complaint, and no such question was submitted to the jury. "The court stated to the counsel that the only question on which they would go to the jury would be that of negligence. Whether in the manufacture and sale of this article, the defendants are guilty of negligence, which negligence produced the injury complained of." If the action had been for negligence in constructing a carriage, sold by the defendants to Collister, by him lent to the deceased, which had broken down, through the negligence of its construction, it might have been contended with the same propriety, that the finding of those facts by the jury established that a carriage was a dangerous instrument, and thereby the liability of the defendants became fixed. The jury found simply that there was negligence in the construction of the wheel, and that the injury resulted therefrom. It is quite illogical to deduce from this, the conclusion that the wheel was itself a dangerous instrument.

Upon the facts as stated, assuming that the deceased had no knowledge of the defects complained of, and assuming that he was in the rightful and lawful use of the machine, I am of the opinion that the verdict cannot be sustained. The facts constitute no cause of action.

The case contains the element, that the deceased was himself personally aware of the defects complained of. Collister testifies that he pointed them out to him, and conferred with him in relation to their effect. Instead of submitting this question of knowledge to the jury, the judge charged, "that if they find from the evidence, that the defendants made a defective wheel for use, and that it broke by reason of t...

defect, the defendants are liable for the defect to whoever used it." To which the defendants excepted.

The question is also presented of the effect of the circumstance, that the deceased was engaged in the use of the machine, without the permission of the owner. Having reached the conclusion, that there can be no recovery independent of these difficulties, it would not be profitable to spend time in their discussion. It is only necessary to say, that in my judgment, they are very important elements, and that,were the plaintiffs otherwise entitled to recover, they would merit the gravest consideration.

I cannot say that there was error in the charge, on the subject of negligence. It was not submitted with clearness, certainly, nor in the most appreciable form. The question is rather, what care the deceased was bound to exercise, than what negligence would be excused. The charge stated, that the " defendants were not exonerated by slight negligence on the part of the deceased, although if he had used the utmost possible care, the accident would not have happened." This is equivalent to a charge, that the deceased was not bound to use the utmost possible care, and is free from objection. The deceased was bound to exercise that care and attention in and about the business he was engaged .in, that prudent, discreet, and sensible men are accustomed to bestow under like circumstances. The utmost possible care is not required. Indeed, its exercise would require an extent of time and caution that would terminate half the business of the world. (*Sheridan* v. *Brooklyn*, 36 N. Y., 43 ; *Wells* v. *Long Island*, 32 Barb., 398, aff'd., 34 N. Y., 670 ; *Button* v. *Hudson River Co.*, 28 N. Y., 258 ; *Curran* v. *Warren Co.*, 36 N. Y., 153 ; *Milton* v. *Hudson S. B. Co.*, 37 N. Y., 212 ; *Owen* v. *Hudson River Co.*, 35, 516.)

The order of the General Term should be affirmed, and judgment absolute given for the defendants.

All concur. Judgment affirmed, and judgment absolute ordered for the defendants.