Rapallo, J.
Upon a careful review of all the testimony in this case, we are of opinion that there was sufficient evidence to require the submission to the jury of the question whether the breaking down of the scaffold was attributable to negligence in its construction. It appears that the ledger which supported the plank upon which the deceased was sitting, broke down without any excesssive weight being put upon it, and without any apparent causes sufficient to break *327 a well, constructed scaffold. One witness, on the part of the plaintiff, accustomed to work on scaffolds and to see them built, testified that the upright which supported the end of the ledger should have been fastened to it by lashing with ropes, instead of by nailing, and that lashing would have made it stronger, giving as reasons for this opinion that the springing of the planks when walked upon was liable to break nails or push them out, whereas lashings would have become tighter, and the witness testified that the kind of scaffold in question was generally fastened by lashing, and that it was not the proper way to support the end of the ledger which broke with an upright nailed to the ledger, and that the ledger in question was fastened by nailing.
Another, a carpenter and builder, testified that when, on account of the curving of a dome, it became necessary to put in a cripple, the cripple, as well as the main uprights, should be tied to the ledgers with rope; that the springing of the scaffold will break nails.
The appearances after the breakage were described to the jury, and a model of the scaffold was exhibited to them. Testimony touching the same points was submitted on the part of the defendants, and we think that on the whole evidence it was a question of fa,ct for the jury, and not of law for the court, whether or not the injury was the result of the negligent- construction of the scaffold.
The question of contributory negligence on the part of the deceased was also one for the jury. They had before them the circumstances of the accident. It appeared that the deceased was sitting on a plank, performing the work for which the scaffold had been erected. He was washing the interior wall of the dome, preparatory to its being painted. There was nothing to indicate that he was in an improper place, or that *328 he unnecessarily exposed himself to danger, or did any act- to contribute to the accident. It is suggested that he or some of his fellow servants may have kicked against the upright or brace which supported the end of the ledger and thus thrown it out of place, but there was no evidence which would entitle the court to assume that the accident occurred from any such cause.
The case was, therefore, one in which the jury might have found from the evidence that the death was caused by the improper or negligent construction of the scaffold, and without any fault on the part of the deceased, and the remaining question is, whether, if those facts should be found, the defendants or either of them should be held liable in this action.
The defendant- Smith claims that no negligence on his part was shown. He was a painter who had made a contract with the supervisors of Kings county to paint the interior of the dome of the county courthouse, and the deceased was a workman employed by him upon that work. As between Smith and the county he was bound to furnish the necessary scaffolding, but he was not a scaffold builder, nor had he any knowledge of the business of building scaffolds, or any experience therein. He did»not undertake to build the scaffold in question himself, or by means of servants or workmen under his direction, but made a contract with the defendant Stevenson to erect the structures for a gross sum, and the work was done under that contract by Stevenson, who employed his own workmen, and superintended the job himself. Mr. Stevenson had been known to Smith as a scaffold builder since 1844. His experience had been very large, and Smith had employed him before, and on this occasion the contract with him was for a first-class scaffold. There is no evidence upon which to base any allegation of incompetency on the part of Stevenson, nor any chgare of negligence on the part of Smith in selecting *329 him as contractor, nor is there any evidence that Smith knew or had reason to know of any defect in the scaffold.
An employer does not undertake absolutely with his employees for the sufficiency or safety of the implements and facilities furnished for their work, but only for the exercise of reasonable care in that respect, and where injury to an employee results from a defect in the implements furnished, knowledge of the defect must be brought home to the employer, or proof given that he omitted the exercise of proper care to discover it. Personal negligence is the gist of this action (Wright v. N. Y. Central R. R. Co., 25 N. Y. 562 ; Warner v. Erie R. R. Co., 39 Id. 468, 475; Wilson v. Meny, L. R. Scotch and Div. App. 326; Fuller v. Jewett, 80 Id. 46).
Under the recent decisions in this State, it may be that if Smith had undertaken to erect the scaffold through agents or workmen acting under his direction, he would have been liable for negligence on their part in doing the work, provided that in doing it they were not fellow servants of the party injured. But in this case he did not so undertake. Stevenson was not the agent or servant of Smith, but an independent contractor for whose acts or omissions Smith was not liable (Blake v. Ferris, 5 N. Y. 48). Smith received the scaffold from him as a completed work, and we do not think that it was negligence to rely upon its sufficiency and permit his employees to go upon it for the purpose of performing their work. Stevenson was, as appears from the evidence, much more competent than Smith to judge of its sufficiency. He had undertaken to construct a first-class scaffold and had delivered i t to Smith in performance of this contract, and we do not think Smith is chargeable with negligence for accepting it without further examination. All that such an examination would have disclosed would have been *330 that the upright was nailed to the ledger, and Smith, not being an expert, would" have been justified in relying upon the judgment of Stevenson as to the propriety of that mode of fastening. The defect was not such as to admonish Smith of danger. •
If any person was at fault in (he matter it was the defendant Stevenson. It is contended, however, that even if through his negligence the scaffold was defective, he is not liable in this action, because there is no privity between him and the deceased, and he owed no duty to the deceased, his obligation and duty being only to Smith, with whom he contracted.
As a general rale the builder of a structure for another party, under a contract with him, or one who sells an article of his own manufacture, is not liable to an action by a third party who uses the same with the consent of the owner or purchaser, for injuries resulting from the defect therein, caused by negligence. The liability of the builder or manufacturer for such defect is in general only to the person with whom he contracted. But notwithstanding this rule liability to third persons has been held to exist when the defect is such as to render the article in itself imminently dangerous, and serious injury to any person using it, is a natural and probable consequence of its use: as where a dealer in drugs carelessly labeled a deadly poison as a harmless medicine, it was held that he was liable not merely to the person to whom he sold it but to the person who ultimately used it, though it had passed through many hands. This liability was held to rest not upon any contract or direct privity between him and the party injured, but upon the duty which the law imposes on every one to avoid acts in their nature dangerous to the lives of others (Thomas v. Winchester, 6 N. Y. 397). In that case Mayor, &c. v. Cunliff, 2 N. Y. 165, was cited as an authority for the position that a builder is liable only to the party for whom he builds, *331 some of the examples there put by the way of illustration were commented upon, and among others the case of one who builds a carriage carelessly and of defective materials, and sells it, and the purchaser lends it to a friend, and the carriage, by reason of its original defect, breaks down and the friend is injured, and the question is put, can he recover against the maker ? ■ The comments of Rugóles, Ch. J., upon this suppositious case, in Thomas v. Winchester, and the ground upon which he answers the question in the negative, shows clearly the distinction between the two classes of cases. He says that in the case supposed, the obligation of the maker to build faithfully arises only out of his contract with the purchaser. The public have nothing to do with it. Misfortune to third persons not parties to the contract would not be a natural and necessary consequence of the builder’s negligence, and such negligence is not an act imminently dangerous to human life.
Applying these tests to the question now before us, the solution is not difficult. Stevenson undertook to build a scaffold ninety feet in height for the express purpose of enabling the workmen of Smith to stand upon it to paint the interior of the dome. Any defect or negligence in its construction, which should cause it to give way, would naturally result in these men being precipitated from this great height. A stronger case, when misfortune to third person^ not parties to the contract would be a natural and necessary consequence of the builder’s negligence, can hardly be supposed, nor is it easy to imagine a more apt illustration of a case where such negligence would be an act imminently dangerous to human life. These circumstances seem to us to bring the case fairly within the principle of Thomas v. Winchester.
The same principle was recognized in Coughtry v. Globe Woolen Co. (56 N. Y. 124) and applied to the- *332 case of a scaffold. It is true there was in that case the additional fact that the scaffold was erected by the defendant upon its own premises, but the case did not depend wholly upon that point. The scaffold was erected under a contract between the defendant and the employers of the person killed. The deceased was not a party to that contract, and the same argument was made as is urged here on the part of the defendant, that the latter owed no duty to the deceased; but this court held that in view of the facts that this scaffold was upwards of fifty feet from the ground, and unless properly constructed was a most dangerous trap, imperiling the life of any person who might go upon it, and that it was erected for the very purpose of accommodating the workmen of whom the person killed was one, there was a duty towards them resting upon the defendant, independent of the contract under which the structure was built, to use proper diligence in its construction. The additional fact that the structure was on 'the premises of the defendant was relied upon, but we think that even in the absence of that feature the liability can rest upon the principle of Thomas v. Winchester.
Loop v. Litchfield (42 N. Y. 351) was decided upon the ground that the wheel which caused the injury was not in itself a dangerous instrument, and that the injury was not a natural consequence of the defect or one reasonably to be anticipated. Losee v. Clute (51 N. Y. 494) was distinguished from Thomas v. Winchester upon the authority of Loop v. Litchfield.
We think there should be a new trial as to the defendant Stevenson, and that it will be for the jury to determine whether the death of the plaintiff’s intestate was caused by negligence on the part of Stevenson in the construction of the scaffold.
The judgment should be affirmed, with costs, as to the defendant Smith, «and reversed as to the defendant *333 Stevenson, and a new trial ordered as to him, costs to abide the event.
Andrews, Ch. J., Daneorth and Finch, JJ., concurred ; Earl, J., concurred as to defendant Smith, and dissented as to defendant Stevenson ; Miller, J., absent; Tract, J., not sitting.