further payments of premiums on the policy in question while the paid-up policy was being arranged for.

Without passing on any of the other questions raised on this appeal, we are of the opinion that in consequence of the erroneous admission of this evidence the judgment, and order denying motion for a new trial, should be reversed, and a new trial ordered; costs to abide the event.

---

(13 Misc. Rep. 392.)

McMULLEN v. EDISON ELECTRIC ILLUMINATING CO. OF BROOK-LYN.

(City Court of Brooklyn, General Term. June 24, 1895.)

NEGLIGENCE—DANGEROUS PREMISES—WHO LIABLE.

Defendant electric light company disconnected the service wires from the distributing wires in a house supplied by it with electric light, in order that the owner of the house might make certain repairs, but failed to tape the end of the service wires. The wires entered the house in the cellar 8 feet from the ground, and the current did not exceed 230 volts, which could not cause death or great bodily harm. *Held*, that defendant was not liable to an employé of the contractor engaged in making repairs for the owner.

Appeal from trial term.

Action by Patrick McMullen against the Edison Electric Illuminating Company of Brooklyn for personal injuries. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before CLEMENT, C. J., and VAN WYCK, J.

Peck & Field, for appellant.

F. R. Hartmann, for respondent.

VAN WYCK, J. This is an appeal from a judgment in favor of plaintiff and an order refusing a new trial. McLoughlin's Washington street house had been lighted by defendant prior to the time hereinafter mentioned. The electric service wires, in a pipe, passed through the cellar wall about eight feet above the floor, where they, when in use, were, in the usual way, connected with the light-distributing wire system of the house. In the summer of 1893 this house was undergoing repairs, including, among other things, plumbing and rewiring. Before the work of repair was commenced, defendant's servant disconnected the service wires from the house-distributing wires. Plaintiff contends that defendant failed to tape or insulate the ends of the service wires, which is denied by defendant. After carefully examining the testimony on this point, we are inclined to think that the weight of evidence is with the defendant, but we will assume it to be the other way, for the purpose of considering the rules of law invoked by the respective parties under such assumption. McLoughlin had contracted with one Donovan to do the plumbing work involved in the repairs, and this plaintiff was his helper and employé; so there was no privity of contract between plaintiff and defendant. This confronts us with the question of "the right of a third party to maintain an action for

injuries resulting from a breach of contract between two contracting parties." The general rule, which denies such right, is so well established as to require no citation of authorities; but it is affirmed that this case comes within an exception to such general rule which is equally well established in this state by Thomas v. Winchester, 6 N. Y. 397; Coughtry v. Woolen Co., 56 N. Y. 124; and Devlin v. Smith, 89 N. Y. 470. The first of these cases was for mislabeling a deadly poisonous medicine as a harmless one, and the other two cases were for the negligent construction of very high staging and scaffolding of insufficient strength. The putter up of the medicine intended that it should be used by those becoming legally possessed of it, and the builder of such scaffold and staging intended that they should be used by the workmen to be placed upon them. The reason for such exception is well stated in the first case: "The death or great bodily harm of some person was the natural and almost inevitable consequence of the sale of belladonna by means of a false label"; and this reason is repeated in the other two cases. Does the case at bar fall within the scope or policy of these authorities? We must answer in the negative, for neither the death nor great bodily harm of any one could be expected from leaving these service wires in their position untaped. Who would have anticipated that any person would have entered this cellar, mounted upon a box, and, after seeing these wires, taken hold of at least two of them at the same time, in such a manner as to make a short circuit, or bring the two wires in contact with his hand near the same point, and thus burn his hand? The evidence is uncontradicted that the Edison current is of low tension, of 115 to 230 volts only, and that the contact with such a current will not cause either death or great bodily harm; and it is fully explained that no burning would have taken place in this case, unless the short circuit had been made by plaintiff, either intentionally or accidentally, and the chances of the latter would be slight. That this exception is confined to cases where the inevitable or natural result of the act of the person complained of is death or great bodily harm to some one is sustained by Loop v. Litchfield, 42 N. Y. 351; Losee v. Clute, 51 N. Y. 494; Swan v. Jackson, 55 Hun, 194, 7 N. Y. Supp. 821. The case of wires, like these, left uninsulated in a cellar, and apparently out of reach, till some one stands upon a box and gets his hand involved in them after seeing them, is not comparable to that of leaving uninsulated wires dangling over or lying upon the surface of a public street, which, it was expressly admitted, would be dangerous to human life. Such admission, that the wires were dangerous to human life, was made in Illuminating Co. v. Grant, 7 N. Y. Supp. 788 (see page 792).

Judgment and order must be reversed, and new trial ordered, with costs to abide the event.