ROBERT WYLLIE et al., Appellants, *v.* JAMES PALMER et al.,
Respondents.

Where one person is sought to be charged with the negligence or
wrongdoing of another, the doctrine of *respondeat superior* applies only
when the relation of master and servant is shown to exist between the
wrongdoer and the person so sought to be charged, at the time of, and in
respect to the very transaction out of which the injury arose. The
fact that the former was at the time in the general employment and pay
of the latter, does not necessarily make the latter chargeable.

B., the chairman of a committee of citizens of the city of A., wrote to
defendants, who were manufacturers of fireworks, asking for a cata-
logue of their goods that they could give for a display costing $500 and
one costing $400. This was sent with "full instructions for firing the
display." B. answered stating they had decided to have a $400 display
and asking "to have a man take charge of the display." Defendants
shipped the fireworks to B. who received them at A. and paid the
freight thereon. Defendants sent one of their men at the time fixed for
the display and a boy went with him to assist in handling the large
pieces. Their expenses were paid by the committee who took entire
charge of the display, the man and boy acting under their directions.
B., a member of the committee, directed the boy to discharge some
rockets. A rocket discharged by the boy struck and injured J., one of
the plaintiffs. In an action to recover damages, *held*, that defendants
did not contract to give the exhibition, but their contract was simply one
for the sale and delivery of the goods; and that the fact that two persons
in their general employ assisted, did not change their relations to the
transactions or make them liable, as said employees were not as to this
transaction engaged in defendants' business or under their control or
direction, but under that of the committee; that considering the con-
tract as one of sale, defendants' duty was performed when they sent a
man competent to assist, and assuming there was negligence on the part
of the boy, he was not at the time acting as the servant of defend-
ants and so, they were not liable.

Reported below, 63 Hun, 8.

(Argued January 31, 1893; decided February 28, 1893.)

APPEAL from judgment of the General Term of the Supreme
Court in the fifth judicial department, entered upon an order
made January 22, 1892, which affirmed a judgment dismissing
the complaint entered upon a nonsuit directed at Circuit.

This action was brought to recover damages for alleged negligence on the part of defendants. The facts, so far as material, are stated in the opinion.

*James R. Cox* for appellants. If, in any view of the evidence, a verdict might justly have been for the plaintiffs, this case should not have been taken from the jury. (*Sheridan* v. *R. R. Co.*, 36 N. Y. 39; *Train* v. *Holland*, 62 id. 598; *Pratt* v. *Ins. Co.*, 130 id. 212; *Clemence* v. *Auburn*, 66 id. 338.) This contract, which defendants performed for $400, was an executory contract for a display, and not for sale of materials. (*Blazy* v. *McLean*, 129 N. Y. 49; *Kenyon* v. *Assn.*, 122 id. 254, 258; *White* v. *Hoyt*, 73 id. 505; *Dwight* v. *Ins. Co.*, 103 id. 341.) These young men, Royce and Kemitz, were the agents and servants of defendants, acting completely within the scope of their employment, doing their master's business. (*Stone* v. *N. T. Co.*, 38 N. Y. 241; *Ochdenbein* v. *Shapley*, 85 id. 220; *Quinn* v. *Power*, 87 id. 537; *R. R. Co.* v. *Derby*, 14 How. [U. S.] 486; *Kimball* v. *Cushman*, 103 Mass. 194.) Had Battams or Pearson directed Kemitz to do something beyond the scope of his employment, and he should do it negligently, resulting in damage to a stranger, certainly defendants would not be liable. (1 Add. on Torts, 476, 477, 488, 490; Wood on Mast. & Serv. 505, § 307; Smith's Merc. Law, 154, 155; Wharton on Neg. §§ 157, 162, 165, 171; *Limpus* v. *Omnibus Co.*, 1 H. & C. 526; *Dalyell* v. *Tyrer*, El., B. & El. 899; *Crocker* v. *Calvert*, 8 Ind. 127.) This *ad hoc* doctrine only obtains when the servant is acting beyond the scope of his employment. (*Murphy* v. *Caralli*, 3 H. & C. 462; *Elder* v. *Bemis*, 2 Metc. 599; *Murray* v. *Currie*, L. R. [6 C. P.] 24; *Kimball* v. *Cushman*, 103 Mass. 194; *Wood* v. *Cable*, 13 Allen, 58; *Crocker* v. *Calvert*, 8 Ind. 127; Schouler's Dom. Rel. 636; Smith on Mast. & Serv. 151, 152, 157: *Southwick* v. *Estes*, 7 Cush. 385.)

*Nathaniel Foote* for respondents. Kemitz, whose alleged negligence is claimed to have caused the injury in question,

was not the servant of defendants in the business of discharging the rockets at the time the accident in question happened. (*Blake* v. *Ferris*, 5 N. Y. 48; *Olive* v. *W. M. Co.*, 103 id. 292; S. & R. on Neg. [4th ed.] §§ 160, 161; *Murphy* v. *Caralli*, 3 II. & C. 461; *Manning* v. *Adams*, 32 Wkly. Rep. 430; *Rourke* v. *W. M. C. Co.*, L. R. [2 O. P. Div.] 205.) There being no conflict in the evidence, the trial court properly determined, as a question of law, that Kemitz was acting, at the time of the accident in question, as the servant of Pierson or the citizens' committee, and not as the servant of defendants. (*Wilds* v. *H. R. R. R. Co.*, 24 N. Y. 430; *Deyo* v. *N. Y. C. R. R. Co.*, 37 id. 9; *Marion County* v. *Clark*, 94 U. S. 278.)

O'Brien, J.  The plaintiffs in this case having been nonsuited at the trial, the general inquiry upon this appeal is whether they were entitled to have the case submitted to the jury.

The plaintiffs are husband and wife and they sought to recover damages for an injury to the wife by the discharge of a rocket, while she was witnessing a display of fireworks at a Fourth of July celebration in Auburn, July 4, 1888. It is claimed that the defendants stood in such legal relations to the transaction as to become liable for the injury. They are partners in the business of manufacturing and selling fireworks at Rochester and they furnished the rocket that injured the plaintiff. The theory upon which the plaintiffs claim to recover is that the defendants contracted with a committee to give an exhibition or display of fireworks and in carrying out this contract the defendants, or their servants, so negligently handled or managed the fireworks, that the rocket was discharged horizontally into a crowd of people and struck Mrs. Wyllie, inflicting the injury complained of. The complaint is framed upon this theory alone and it is proper to say that the learned counsel for the plaintiffs, in his brief and in his oral argument in this court, boldly rests his whole case upon that principle. Neither by pleading, proof or argument has

he suggested or claimed that there was any other ground for a recovery. The defendants deny that they ever made such a contract or that they ever gave, controlled or directed any such exhibition. The controversy is thus reduced to the inquiry as to what the defendants' legal relations were, upon the proofs given at the trial, to the transaction which was the cause of the injury.

This is to be ascertained from the testimony of the plaintiffs, for the defendants gave none, and there is no conflict or doubt with respect to the facts. Some time prior to May 1, 1888, a public meeting was held at Auburn, which was attended by the mayor and principal citizens, who resolved to have a celebration on July fourth, and a committee was then and there appointed to have general charge of it, consisting of thirty persons. Out of this general committee various sub-committees were formed and among them a committee of five on fireworks, of which George H. Battams was the chairman. He opened a correspondence with the defendants which must determine the legal nature of the transaction. His first letter is dated May first, in which he wrote to the defendants "please send me your catalogue of your goods. I wish you would mark out a display for the Fourth of July that will cost $500." The natural and obvious construction of this language is that the chairman of the committee asked defendants for a catalogue of their goods upon which should be indicated such articles as would be sold for $500. This letter does not appear to have been answered, and on May eighteenth, the chairman wrote again asking for the "catalogue of your goods, with a display you can give for $500, also a display for $400." Four days afterwards the defendants wrote to the chairman, in which they stated that: "We inclose programme of exhibition which we have made up specially for you, and have taken pains to give you a very fine display * * * to cost $500 net. * * * If you do not wish to expend this amount, let us know, and we can reduce it to any amount desired by taking out some pieces. We make no charge for boxing or cartage, but expect you to return us the empty boxes and

frames.   We inclose printed sheet giving full instructions for firing the display." It seems quite clear that this was nothing more than a proposition on the part of the defendants to sell and deliver certain goods specified, on what is called a programme, for $500.   Nothing more was done till the twelfth of June, when the following letters were exchanged and which constitute the contract:

"Auburn, *June* 12, 1888.

" Mr. J. Palmer's Sons :

" Dear Sirs — At last we have arrived at a conclusion in regard to the exhibition.   I have been trying to get the whole thing, $500, but failed.   At last we have decided to have a $400 display.   Will you please inform me what you will give in that, including the steam engine and Mr. Wheeler's picture. We have had four others to buck against; three from New York and one from Syracuse.   Mr. Scott had one from New York.   There is considerable kicking, but we are there. Please give us a fine display.   We would like to have a man to take charge of the display.   Please inform me how many posts you will need.   I have the model of post, the one we used last summer.   Of course, the $500 is a fine display, and I think you can give a fine $400 out of that.

" Hoping to hear from you soon, I rem. yours truly.
" GEO. H. BATTAMS."

To which the defendants replied as follows: .

"Rochester, N. Y., *June* 14, 1888.
" Geo. H. Battams, Esq., *Auburn, N. Y.*:

" Dear Sir — Your favor of the 12 inst. at hand, with programme.   We understand that we have your positive order for display to cost four hundred dollars net, including expense of man, and we inclose you programme, representing the goods we will send.   We have included the steam fire engine and bust of Mr. Wheeler.   You should have sixteen posts made like the model you have, one for each piece.   The net price of the bust of Mr. Wheeler, with name and arch, is $50, and will be large and got up fine as possible.   This will give

you the finest display that can be had for the money.  We
will put our very best work in it, and know you will be
pleased.  It is a pity you did not accept our other programme
and raise the whole $500, and if there is any possibility of
your raising the other $100, we would advise you to do so,
and we will ship the goods.

"Yours, &c.,

"JAMES PALMER'S SONS."

The defendants, as a result of this correspondence, shipped
the goods by rail to the chairman, and the latter took them
from the station at Auburn and paid the freight thereon.  On
the third of July defendants' man came to Auburn, called
upon the chairman at his place of business, and was by him
taken to a hotel, and the expenses were paid by the committee.
There came with him a boy about seventeen years old to assist
in raising and handling the large pieces.  The committee took
charge of the display, fixed the time and place, which was an
inclosed space about two hundred feet from east to west in
one of the principal streets of the city.  It was arranged that
the large set pieces were to be discharged at the west end of
the space and the rockets and small pieces from the east end.
All the arrangements were made by the committee, and the
man and boy sent by the defendants acted under its directions.
While the man was engaged setting and discharging the large
pieces at the west end of the space, which was inclosed with
ropes, the chairman of the committee on fireworks ordered
another member of the committee and the boy to discharge
the rockets at the other end, and this order they proceeded to
carry out, and in doing so the boy so handled one of the
rockets that it was discharged horizontally and injured the
plaintiff, who was one of the bystanders.  The contract of the
defendants with the committee was in writing.  The parties
had no personal interview.  It was either a contract for the
sale and delivery of the goods, or a contract for services and
materials.  The language was not ambiguous or equivocal,
and hence it was not competent to ask the jury to determine
its construction, meaning or legal effect.  (*Arctic Fire Ins. Co.*

v. *Austin*, 69 N. Y. 470; *Kenyon* v. *K. T. & M. M. A. Assn.*, 122 id. 247; *Marvin* v. *Brooks*, 94 id. 71; *Dwight* v. *Germania Life Ins. Co.*, 103 id. 341; *Brady* v. *Cassidy*, 104 id. 147.)

Indeed the learned counsel for the plaintiffs does not claim this. His position is that the contract is, as matter of law, one obligating the defendants to give a display or exhibition.

Upon every test that can be applied to this contract it seems to me that it is one for the sale and delivery of personal property. If the defendants failed to perform it the damages against them would have to be measured upon the principles applicable to a breach of contract for the sale and delivery of goods. The city or the persons in charge might be able to show very large damages for breach of a contract to give an exhibition or display, but it would seem to me preposterous to measure the loss upon such a theory. The defendants parted with the title to the property upon delivery to the carrier at Rochester. While in the depot at Auburn a levy by virtue of an execution against the defendants would not bind them, and if, while there, they had been destroyed, the loss would not fall upon the defendants. The chairman of the committee purchased the goods from the defendants, and it is, as manufacturers and vendors of the fireworks only, that the defendants are connected with the injury. The committee, not the defendants, gave the display. It was for that purpose they were appointed. They procured the funds, selected the place, fixed the time and directed and controlled everything that was done from the beginning to the end. It would be a gross perversion of the language and intention of the parties, and of all the facts, to hold that the defendants were occupying the streets of Auburn on the evening in question, controlling and directing a display of fireworks for the amusement of the citizens, while the committee had ceased to direct and had become mere spectators. The fact that two persons who were in the general employ of the defendants aided and assisted in discharging the fireworks does not change the situation or the relations of the defendants to the transaction. They were not, as to this transaction, engaged in the defendants' business, nor

under their control or direction, but were in the business of the committee, controlled and directed by them. The plaintiffs' counsel, as already observed, rests the case upon the proposition that the defendants were independent contractors for the performance of certain work or services for the committee. His argument contains no suggestion that the defendants are liable if the contract was one for the sale of goods. The action was not brought and the complaint was not framed upon that theory, and as I think the plaintiffs' construction of the contract is not the correct one, the discussion might very well end here. But it may not be amiss to ascertain whether the defendants can be made liable upon any possible view that may be taken of the transaction. A manufacturer and dealer in dangerous articles intended for use, such as explosives of this character, may become liable to the purchaser at least, and possibly to third persons in some cases, for damages resulting from defective materials or from want of proper care and skill in the manufacture, but it has never been held that he could be made liable for an injury resulting from the negligent or improper use of the article by the purchaser or by third persons. (*Loop* v. *Litchfield,* 42 N. Y. 351 ; *Losee* v. *Clute,* 51 id. 494 ; 7 Am. & Eng. Encyclopœdia of Law, 417–524.)

It is not necessary, however, in this case to pursue the inquiry or to attempt to define the liability of a manufacturer and dealer in fireworks in all cases because no claim is made in behalf of the plaintiffs that the defendants did not in this respect perform all the obligations imposed upon them by the contract, and every duty that may have been due to the public, if the contract was one for the sale of goods.

It may be said that a part of the contract was that defendants should send a man to assist in handling and exploding the pieces sold. The defendants performed all its obligations in that respect. They did send a man who was perfectly competent for the work and it is not shown that he was guilty of any fault or neglect whatever. Even if the injury was the result of some fault on his part it would not follow that the defendants were liable for it. Their duty was performed

when they selected and sent to the committee a man who was competent for the work and possessed the necessary experience and skill, and it is not claimed that they were delinquent in this respect. When he arrived at Auburn and the committee took charge of him and assumed to direct and control him, as they were entitled to do under the contract, he became their servant, and as the defendants were not insurers against every possible mistake that he might make, they were not then responsible for his acts, even if it was shown that he was in fault, which clearly it is not. But the defendants did more than they agreed to. They sent a boy with the man as a helper. It was intended that he should assist the man in handling and setting off the larger pieces, not that he should discharge rockets or perform any other duty. He was perfectly competent in every respect to perform the work for which the defendants employed him. But a member of the committee, under the direction of the chairman, ordered this boy to assist him in discharging the rockets and he obeyed the order. This is the only fault of which he was guilty, for it may be assumed that he was not possessed of the necessary experience and skill to handle and discharge fireworks. That was not the work that the defendants employed him to do and not the work that they intended he should do on this occasion. But are the defendants liable because he did not refuse to obey this order? Are they liable because the older, more experienced and competent man permitted him to obey it? There is no evidence in the case that the latter even heard the order or knew it was given or had any other knowledge that the boy was being put by the committee at such work, but even if he had, what power or right did he have to disregard or resist the directions of the committee, who had the real charge of the whole affair? Certainly the defendants are not liable unless the boy, at the time he discharged the rocket, was the defendants' servant engaged in their business. The learned counsel for the plaintiffs claims that he was, but this claim rests entirely upon the erroneous assumption that the defendants were independent contractors to give an exhibition and that there was

no sale by them of the goods. This is obviously the only ground upon which the relation of master and servant between the defendants and the boy at the time of the accident can rest. If the display was that of the committee, as I think it was, then both the man and the boy, though in the general employment of the defendants, were nevertheless the servants of the committee and for the time being under its direction and control. Suppose the platform or staging built by the committee contained a rotten plank or board that gave way while the man and boy were upon it, and injured them, who would be responsible for this negligence ? There can be no doubt, I think, that such liability would fall upon the members of the committee and persons in general charge and not upon the defendants. (*Butler* v. *Townsend,* 126 N. Y. 105 ; *Olive* v. *Whitney Marble Co.,* 103 id. 292 ; *Blake* v. *Ferris,* 5 id. 48.)

The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong, at the time and in respect to the very transaction out of which the injury arose. (*Thorpe* v. *N. Y. C. & H. R. R. R. Co.,* 76 N. Y. 406 ; *Dwinelle* v. *N. Y. C. & H. R. R. R. Co.,* 120 id. 117 ; *Penn. Co.* v. *Roy,* 102 U. S. 451 ; *Wood* v. *Cobb,* 13 Allen, 58 ; *Kimball* v. *Cushman,* 103 Mass. 194 ; *Ward* v. *New England Fibre Co.,* 154 id. 419.)

The fact that the party, to whose wrongful or negligent act an injury may be traced, was at the time in the general employment and pay of another person, does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time and who has the right to control and direct his conduct. The rule on this subject is well stated by a learned author on the law of negligence as follows : " He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work but in all its details. The

payment of an employee by the day, or the control and supervision of the work by the employer, though important considerations, are not in themselves decisive of the fact that the two are master and servant. * * * Servants who are employed and paid by one person, may, nevertheless, be *ad hoc* the servants of another in a particular transaction, and that too where their general employer is interested in the work. They may, without consulting their master, but in good faith, assist a person independently employed to do something which shall benefit their master, but with which neither he nor they have any right to interfere, and in which they act entirely under the control of such other person. In none of these cases is the nominal master responsible to strangers for their acts or omissions." (Sher. & Redf. on Neg. [4th ed.] p. 269.)

Assuming that the contract between the committee and the defendants, was for the sale of fireworks, the boy, who it is said negligently discharged the rocket that injured the plaintiff, was not at the time the servant of the defendants, there was no question upon the evidence to submit to the jury, and hence no error in granting the nonsuit.

The judgment should be affirmed.

All concur, except FINCH, J., dissenting, GRAY and MAYNARD, JJ., concurring in result.

Judgment affirmed.