before the date of the will take.    In the latter case, Judge O'Brien, in citing Christopherson v. Naylor with approval, said:

"The gift of a remainder was to a class, followed by a substitutionary gift of the share of any one in the class who should die, to the next of kin of this deceased person. No one can take under this substitutionary clause who cannot show that his parent might have been one of the original class."

His concluding remarks are peculiarly applicable to the present case:

"Bequests similar to the one now under consideration have been the subject of much controversy in regard to the right of the issue of predeceased children to take when the words used in the will were left open to construction. But, as was said in Re Crawford, 113 N. Y. 366, 21 N. E. 142, we are relieved in this case from the necessity of a critical examination of the cases on the general subject, for the reason that the language of the will is so plain as to remove any doubt about the meaning of the testatrix. She evidently intended that the fund invested should, upon the death of her niece, pass to the children of that niece who were living when the will was made, and the next of kin of any of them who subsequently died."

The intention here is as clear as was the intention there, and no doubt is left, after the closest scrutiny of the entire will, as to Mr. Higgins' meaning.

The appellants rely upon Teed v. Morton, 60 N. Y. 502.    The provision there, however, brought the case within the rule laid down in Tytherleigh v. Harbin, supra.    The gift was to the testator's "surviving children, and the issue of such of them as may have died leaving issue."    Thus, the issue of such as might have died leaving issue were "comprehended concurrently" with the surviving children.    The gift to the issue there was thus primary, independent, and substantive.

Upon both principle and authority, therefore, our conclusion is that the issue of such of Mrs. Perley's children as had died prior to the making of Mr. Higgins' will took nothing under the seventh clause of his will.

It follows that the judgment appealed from was right, and should be affirmed, with costs.    All concur.

---

HALLETT et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department.    June 23, 1899.)

MASTER AND SERVANT—WRONGFUL DEATH—CO-EMPLOYES.

Defendant, at the request of a telegraph company, detailed a brakeman to guard a hand car used in transporting materials while constructing its line along defendant's track. The brakeman took charge of the hand car, so far as it became necessary to protect trains from colliding therewith. He was stationed either in front or behind it to flag trains, and took exclusive charge of switches for which he alone had the keys. He was paid by the telegraph company when accompanying the hand car, but, when not doing so, he was serving defendant as brakeman. While thus engaged, he ran the hand car onto a side track, but carelessly left the switch open, and a passing engine running into it was derailed, and the engineer was killed. *Held*, that the brakeman and engineer were co-employés, and defendant was not liable for his death.

Rumsey and O'Brien, JJ., dissenting.

Appeal from trial term, New York county.

Action by Minnie E. Hallett and another against the New York Central & Hudson River Railroad Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

George S. Hamlin, for appellants.
Charles C. Paulding, for respondent.

McLAUGHLIN, J. On the 3d day of August, 1895, Edgar A. Hallett, a locomotive engineer in the employment of the defendant, was killed, and this action was brought to recover damages for the pecuniary injuries sustained by the widow and next of kin, upon the ground that his death was caused by the alleged negligence of the defendant. Upon the trial at the close of the plaintiffs' case the complaint was dismissed, and from the judgment thereafter entered the plaintiffs have appealed.

The evidence introduced upon the trial established that, on the morning of the day of the accident, Hallett started from New York with a locomotive engine attached to a passenger train to go to Chatham on the Harlem Railroad, and that, when the train arrived at or near Craryville, it, by reason of an open switch, was thrown upon a side track, derailed, and Hallett killed. The evidence also established that at the time of the accident the Western Union Telegraph Company was, and for some time immediately prior thereto had been, engaged in building or repairing its telegraph line, which extended along the side of the defendant's railroad tracks; that, for the purpose of transporting the necessary materials, it used on the defendant's tracks, with the defendant's consent, a hand car, which, as occasion required, was pushed from place to place by the employés of the telegraph company; that, when the telegraph company was about to commence the work of such construction or repair, its foreman having charge of that work notified the defendant through its train dispatcher and requested that the defendant detail one of its servants "to protect the tracks" while the work was being done, and in response to which the defendant detailed one Abraham, or "Brownie" Miller, who took charge of the hand car, so far as it became necessary to protect trains running on defendant's road from colliding with it; that Miller alone had the keys of, and was the only person who was permitted to turn, the switches on the railroad tracks; that he knew the time when trains would pass, and when the hand car was upon the main track he was the flagman, and was stationed either in front of or behind it; that the defendant had other servants who took Miller's place in his absence, though, as a general thing, he accompanied the employés of the telegraph company having charge of the car, and, when he did so, his wages were paid by the telegraph company; that on the day of the accident, shortly before the arrival of the train hauled by the locomotive engine operated by the intestate, the foreman in charge of the work for the

telegraph company directed that certain materials be placed upon the hand car, which was then standing upon the main track, and that the car be pushed onto the side track at Craryville; that the materials were placed upon the car, and it was then moved by the telegraph company's employés, under the direction and control of Miller, to the place designated, the switch being opened by him for that purpose, and which he negligently and carelessly omitted to close, before the arrival of the intestate's train, and by reason thereof the unfortunate accident happened, with the result before stated.

The learned trial justice was obviously of the opinion that Miller was a co-employé of the plaintiffs' intestate, for whose negligence the defendant was not responsible; and, if he was right in that conclusion, then the judgment must be affirmed. That the plaintiffs were not entitled to recover, if the intestate lost his life by reason of the negligence of a co-employé, is so well settled that it is unnecessary to discuss the proposition. The question then to be determined, and it is the only one which we deem it necessary to consider, is whether at the time of the accident Miller was in the employment of the defendant railroad or in the employment of the telegraph company. If the former, then the judgment is right; if the latter, then it must be reversed. Rules have many times been stated and in many different ways for determining whether one is in the employ of another, so as to constitute the relation of master and servant between them. Thus in Shear. & R. Neg. (4th Ed.) p. 269, it is said that "he is to be deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details"; and in Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, it is said that "the master is the person in whose business he [the servant] is engaged at the time, and who has the right to control and direct his conduct." But all the authorities substantially agree that such relation exists when the master selects, in the first instance, and may thereafter discharge the servant, and can direct, while the employment continues, not only what work the servant shall do, but the manner or method in which he shall do it. Applying this test to the facts here presented, it at once becomes apparent that Miller was the servant of the defendant, and not of the telegraph company. He was, as we have already seen, selected, in the first instance, by the railroad company, and it alone had the right to discharge him. He was by it directed to do the work which he was doing. It furnished him with the appliances to do that work,—keys to the switches and flags to control the movements of trains, if that became necessary for their protection. When the hand car was upon the main track he acted in the capacity of flagman. It was then in his care, and when it was there moved by the servants of the telegraph company it was under his control. When it was desired to move the car, the telegraph company's foreman would notify him of that fact, and then, by his permission, the same would be moved. The work which he did was on the defendant's premises, and was performed

for its benefit, and, when not engaged in accompanying the car, he rendered services for the defendant as brakeman on one of its trains. It seems to us clear, under such facts, that Miller was, in every aspect in which his employment and the services which he rendered can be viewed, the servant of the railroad company, and not of the telegraph company. The defendant, of course, could with its own servants have moved for the telegraph company the car; but it also had the legal right, subject to its own management and control, to permit the telegraph company to move it with its own servants, and an employé detailed by the defendant to take charge of the movement of the car would not cease to be in its employ in the latter case any more than he would in the former. It could just as forcibly be claimed that a servant designated by the defendant to take a private car over its road was, while performing that act, a servant of the owner of the car, and not of the defendant, as it can in this case be claimed that, in rendering the services referred to, Miller was the servant of the telegraph company, and not of the defendant. The defendant could not hand over the operation of its switches and tracks to the telegraph company, but it could permit the telegraph company, subject to its management and control, to run a car over its tracks. That is just what it did, and no more. But it is urged by the appellants, inasmuch as Miller, when he accompanied the car, was paid by the telegraph company, that this, taken in connection with what he did, in and of itself established the relation of master and servant between him and the telegraph company. We do not think so. While the payment of the wages to an employé is always an important fact to be considered, it is not decisive of whether the relation of master and servant exists. That fact must be taken in connection with the other facts, and from them all the question must be determined. "The fact," says Judge O'Brien, in Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, "that a party to whose wrongful or negligent act an injury may be traced was at the time in the general employment and pay of another person does not necessarily make the latter the master and responsible for his acts." And in Shear. & R. Neg. (4th Ed.) p. 269, it is said:

"The payment of an employé by the day, or the control and supervision of the work by the employer, though important considerations, are not in themselves decisive of the fact that the two are master and servant. * * * Servants who are employed and paid by one person may nevertheless be, ad hoc, the servants of another in a particular transaction, and that, too, where their general employer is interested in the work."

Under all the authorities to which our attention has been called upon the facts presented in this record, it must, we think, be held that Miller was the servant of the defendant engaged in a common employment with the intestate (McDonald v. Railroad Co., 63 Hun, 587, 18 N. Y. Supp. 609, affirmed 138 N. Y. 663, 34 N. E. 514), and for whose negligence the defendant cannot be held responsible. In reaching this conclusion, we have not overlooked the authorities called to our attention by the appellants; but they are not in point. In Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, the defendant sold and

shipped to the chairman of a committee of citizens of the city of Auburn some fireworks for a Fourth of July celebration, and, at the request of the chairman, they sent one of their servants with a boy to assist in handling the larger pieces. The boy was directed by a member of the committee to discharge some rockets, and, in doing so, one of the plaintiffs was injured. The court held that a recovery could not be had, because the defendants contracted, not to give an exhibition, but simply to sell and deliver goods, and the fact that two persons in their general employment assisted in giving the exhibition did not change their relation to the transaction or make them liable, and that such employés were not, as to that transaction, engaged in defendants' business or under their direction or control. In McInerney v. Canal Co., 151 N. Y. 416, 45 N. E. 848, the plaintiff was in the employ of a lumber dealer who had constructed upon his own land a switch track extending from his lumber yard to the defendant's tracks. The defendant's servants, at the request of the lumber dealer, entered his yard for the purpose of moving cars for him, and the court held that in doing that act they were the servants of the lumber dealer, and not of the defendant. In Higgins v. Telegraph Co., 156 N. Y. 75, 50 N. E. 500, the plaintiff was a servant of a contractor who had engaged to repair or reconstruct a building for the defendant. The work contracted to be done included the putting in of certain elevators, which at the time of the accident had been placed in the building, but had not been turned over to or accepted by the defendant. The defendant, however, at certain times, used the elevators for the transportation of passengers, and for that purpose had a servant who operated the same. On the day the plaintiff was injured the contractor, for the purpose of plastering the sides of the elevator shaft, used the elevator as a platform upon which his servant, the plaintiff, stood while doing that work. The defendant's servant, who had at times operated the elevator, was directed by the contractor to move the same while the plaintiff was standing upon it, and, in doing so, the plaintiff was injured. The court held that the defendant was not liable; that the person operating the elevator was at the time the servant of the contractor, and not of the defendant; that the contractor had the right to use the elevator, and, for that purpose, could have employed his own servant to operate it; but, instead of doing so, he borrowed the defendant's servant, who for the time being became the servant of the contractor engaged in doing his work and subject to his orders. It is apparent that each of these cases is clearly distinguishable from this one. Here Miller, as we have seen, was rendering services for the defendant upon its premises and for its benefit. It hired and alone could have discharged him. The use of the hand car imposed an additional burden upon the defendant, inasmuch as greater care and caution had to be exercised by it in the operation of its road, and especially in the movement of its trains. This additional burden necessitated the services of an extra servant, and it was both legitimate and proper that his wages should be paid by the telegraph company; but such payment did not change the relation of master and servant existing between him and the railroad company.

Other questions are raised by the appellants, but, after an examination of them, they do not seem to be of sufficient importance to be considered here.

It follows that the judgment is right, and must be affirmed, with costs. All concur, except RUMSEY and O'BRIEN, JJ., dissenting.

RUMSEY, J. (dissenting). The plaintiff's intestate, who was an engineer in the employ of the defendant company, was killed on the 3d day of August, 1895, while running his engine over the defendant's railroad. The engine on which he was employed ran off the track at a station known as "Craryville," where a switch had been left open in such a way as to turn the engine off of the main track while it was passing the station at full speed. The switch had been left open by a person named Miller, who was engaged at work there at that time, and the court at trial term held that he was a co-employé with Hallett in the defendant's service at the time the accident occurred, and that the plaintiffs were not entitled to recover, because the negligence which brought about the accident was the negligence of a co-employé of the intestate. He consequently dismissed the complaint, and from the judgment entered upon that dismissal this appeal is taken.

The injury to Hallett, the plaintiff's intestate, happened because a switch upon the defendant's road had been left open. The duty of the defendant in regard to him was to use reasonable care to see that the road was in proper condition. If it permitted its tracks to be used by some other corporation for its own business, the defendant could not thereby escape the duty it owed to its employé to protect him, and it was liable for any injury occurring to its engineer for the acts of those persons who, by their carelessness in doing the work of a strange corporation on these tracks, left open the switch and caused the derailment of Hallett's engine. That this was the act of Miller was conceded. If, when he did it, he was engaged in the business of the defendant, he was a co-employé of Hallett, and defendant was not liable, but, if at that time he was in the service of another master, he did not hold towards Hallett the relation of co-employé, and the defendant must answer for the negligence. So it will be seen that the only question presented is whether Miller, who left the switch open, was at the time of committing the act, which required him to open the switch, not only in the employ of the defendant, but engaged in the business of the defendant in such a way that he was the defendant's servant at the time the work was done. The complaint was dismissed by the learned justice at the close of the plaintiffs' evidence, and the plaintiffs, therefore, are entitled to every fair inference in their favor which may be drawn from the evidence; and, if in any aspect in which the case was presented the jury might have found that Miller, when he left the switch open, was actually the servant of some one other than the defendant, it must be deemed that they would have thus found it, and the judgment must be reversed.

The facts were that, on the day and at the place where the acci-

dent occurred, the Western Union Telegraph Company was en-
gaged in stringing wires along the line of the defendant's railroad.
For that purpose, the men in the employ of the telegraph company
had been furnished by it, and not by the defendant, with a car
called a "push car," upon which were loaded the wire and tools
and such other things as it was necessary to take with them for
the performance of their work.    Miller, the person who left the
switch open, was a brakeman in the employ of the defendant.    He
had been detailed to work with the Western Union gang, to aid
them in doing their work, at the request of that corporation, hav-
ing been sent there by the defendant, as it was said, to protect the
tracks, this protection being necessary, not because of any work of
defendant then doing, but solely as a part of the business which
the Western Union Company was engaged in along the line.    Mil-
ler had furnished to him by the defendant a key to the switches,
and no one else could open or close them.    There was, however, a
foreman of the gang who had charge of the manner in which all
the work shold be done, except the mere opening and closing of the
switches.    He gave directions as to what should be done with the
car.    The car was moved when he gave instructions to do so.
The car was put upon the side track in pursuance of his orders,
which he says were to be obeyed in that respect.    The car was
taken from place to place where it might be necessary to use the
supplies that were upon it, and the foreman gave directions when
it should be taken and where it should be left for the convenience
of the men who were working in the gang.    It was not transported
along the track by the defendant's engines, but was pushed from
place to place by the men in the Western Union Telegraph gang.
It is undisputed that the car had been taken to the particular place
where the accident occurred and put upon the side track by the di-
rection of the foreman of the Western Union gang.    Miller was
there for the purpose of superintending the transfer of the car from
place to place as it was directed to be done by the foreman.    He
went either ahead or behind the car, as might be necessary to flag
it when it moved, and opened the switches to put the car upon the
side track when he was directed so to do, and was expected to close
them again.    He was paid by the Western Union Telegraph Com-
pany.    Was he, or was he not, in doing this particular work, the
servant of the Western Union Company?    Ordinarily, of course,
the question whether one man is the servant of another depends
upon whether the alleged master hired him and pays him and may
discharge him, so that he has control of his movements and the
right to direct him in what he shall do.    When that condition of
affairs exists, the person who hires and controls and may discharge
is undoubtedly the master.    But all those things may exist and
yet, in the particular case, the alleged servant may be the servant
of another person than the man who has hired him and who may
discharge him.    In this case, while Miller was hired by the defend-
ant and was generally in its employ, yet it appears that he was
paid for the work that he did by the Western Union Telegraph
Company.    Whether or not that company could have discharged

him is a matter of very little importance. Undoubtedly, if his work were unsatisfactory, they could refuse to permit him longer to continue in their gang. What would have been the result of it —whether the defendant company would have allowed them to go on with the work—is a matter of no importance; but undoubtedly they might have refused to pay him or to permit him to work any longer in that gang, in which case he would no longer be engaged in that particular duty. So it will be seen that the fact that he was employed originally by the defendant, and that he was sent by the defendant with the men at work for the Western Union Company, is not itself decisive of the question whose servant he was, because, where one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant for the man to whom he is lent, although he remains the general servant of the person who lends him. Hasty v. Sears, 157 Mass. 123, 31 N. E. 759. So in each case the question is whether, at the time the act of negligence was committed, the person who committed it was in the employ of the person sought to be held liable, or of somebody else. McInerney v. Canal Co., 151 N. Y. 411, 45 N. E. 848; Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381; Shear. & R. Neg. §§ 160, 161. As is said in the book last cited, servants who are employed and paid by one person may, nevertheless, be ad hoc the servants of another in a particular transaction, and that, too, even where their general employer is interested in the work. Shear. & R. Neg. § 161.

The decisive question here, therefore, is whether, at the time Miller committed this act of negligence, he was in fact engaged in the business of the Western Union Telegraph Company or in the business of the defendant. It is quite clear that the push car was transported from place to place by the Western Union Telegraph Company, and for their convenience. The work to be done with that car was their work. Whether it was done at all was a matter, so far as the evidence shows, of not the slightest importance to the defendant. It is very clear that, if the Western Union Company had not been desirous of stringing its wires, it never would have had the push car there, and would have had no occasion to be upon the defendant's track with it. It is not correct to say that the defendant was transporting the goods of the Western Union Company upon this track. Nothing of the sort appears. The jury might have found from the evidence that the defendant had put its track at the disposal of the Western Union Company, so that it could run its car over the defendant's road for the purposes of the telegraph company, and that everything that was done while the car was thus passing over that track was done by the Western Union Company's agents for the Western Union Company to enable its men to do its work, and not to do anything in which the defendant had the slightest interest. It is true that Miller was protecting the track. But he was protecting it against the passage of the car which was sent over it by the Western Union Company for its own purposes. If that company had not been using the track, there would have been no occasion for Miller to do that work. He

was sent there for the purposes of the telegraph company to do the work which was required in the business of that company. His employment there only lasted there so long as that company had occasion, and everything that he did was made necessary to be done because the Western Union Company was transporting that car over the defendant's railroad for its own purposes. There is nothing in the case to show that while Miller was thus engaged he was at all under the direction of the defendant. The evidence is that the car was moved by the Western Union men at the direction of the foreman of that gang. Miller had nothing to say, so far as appears, as to when it should be moved or where it should be taken, or where it should be left, but his only duty was to go in front of or behind it, as might be necessary, to protect it, and open the switches that it might be put where the Western Union Company wanted to put it. There is not one word of evidence to show that, in doing this work, he was subject to the control of the defendant or any of its officers. When he was relieved from this duty, he ceased to be paid by the Western Union Company, and he went back to his work as a brakeman. But, while he was at this work, he was not only paid by the Western Union Company, but he was under the directions of the foreman which they had put there to control this work. It cannot be said that he was the servant of the defendant, but he was out of the service of the defendant for this particular purpose, and the doctrine of negligence of a coservant to relieve a party from his own negligence cannot be invoked for the benefit of the defendant here.

The judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

O'BRIEN, J., concurs.