PETRO FAVO, Respondent, *v.* REMINGTON ARMS COMPANY, Appellant.

*Manufacturer of a gun — liability of, to one injured while using it — its bursting does not establish such liability — for what use it must be suitable — expert testimony as to defects therein.*

The manufacturer of a gun is liable to a person, into whose possession the gun comes after having been owned and used by several other persons, for any damages resulting from the manufacturer's negligence in using defective material or from want of proper care and skill in manufacturing it, even if no warranty accompanied the sale of the gun by the manufacturer.

The mere bursting of the gun does not establish liability on the part of the manufacturer.

The manufacturer is only required to make the gun suitable for use under the conditions, as to the kind of powder used, existing at the time it was put on the market.

A barber, who had no experience with broken metals, except razors and shears and bicycles, and had seen only two broken gun barrels, and those when he was a boy in Italy, and knew nothing of the manufacture of guns or the composition of the metal of which gun barrels are made, is not qualified to testify as an expert upon the question whether there was a defect in the metal of the gun barrel which burst when the gun was fired.

APPEAL by the defendant, the Remington Arms Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 24th day of November, 1899, upon the verdict of a jury for $2,648, and also from an order entered in said clerk's office on the 28th day of November, 1899, denying the defendant's motion for a new trial made upon the minutes.

*Amasa J. Parker, Jr.,* for the appellant.

*Andrew Colvin,* for the respondent.

HOUGHTON, J.:

The action is to recover damages for injuries resulting from the explosion of a gun manufactured and sold by the defendant. The plaintiff asserts that the defendant was guilty of negligence in the use of material and its manner of manufacture. The sale was not made directly to the plaintiff, but the gun came to his possession after having been owned and used by several persons. No warranty accompanied the sale. It was manufactured and sold by the defendant in 1894 when black gunpowder was commonly used by sportsmen in making cartridges.

The accident occurred in 1897 after the gun had been in use about three years. In that interval nitro or smokeless powder came into use. Smokeless powder has nearly twice the force of the same quantity of black powder. The maximum charge of smokeless powder for a cartridge intended to be used in the character of gun which exploded is forty-five grains. Plaintiff manufactured his own cartridges, and had prepared a number for use at the time of the accident. The gun was a double-barrelled one, and he had fired one

barrel, when upon firing the other the explosion occurred. A cartridge made at the same time with the one which exploded was produced upon the trial and was shown to contain fifty-two grains of smokeless powder. Plaintiff claimed to have followed the directions of the powder manufacturers, which it was usual to do in the making of cartridges.

While a gun of itself is not a dangerous instrument, yet it is intended to be loaded and fired, and if made of improper material and negligently put together it is liable to explode and do serious injury to life and limb. It becomes, therefore, in the use for which it is intended, a dangerous instrument.

A manufacturer and dealer in dangerous articles intended for use, such as a gun, is liable to the purchaser at least for damages resulting from his negligence in using defective materials, or from want of proper care and skill in manufacturing. (*Wyllie* v. *Palmer*, 137 N. Y. 255; *Loop* v. *Litchfield*, 42 id. 351; *Thomas* v. *Winchester*, 6 id. 397.)

This is not upon the ground of warranty, express or implied, but because the vendor owes to the public a duty not to expose human life to danger by negligently and carelessly putting upon the market an article as harmless which is in fact dangerous.

But, in order to fasten liability upon a manufacturer, a negligent use of material and want of proper care and skill in the manufacture must be proven. The bare bursting of a gun does not make a manufacturer liable.

The plaintiff recognized this rule, and alleged and attempted to show that there was a defect in the metal of the barrel which exploded, and called witnesses Capellano and Kilbourn as experts upon that question.

Capellano was a barber, and had had no experience with broken metals, except razors and shears and bicycles, and had seen only two broken gun barrels, and those when a boy in Italy, and knew nothing of the manufacture of guns or the composition of the metal of which gun barrels are made.

Against the objection of defendant that he was not competent to speak as an expert, the court allowed him to give his opinion that the metal was defective before the explosion. This was manifestly error, for the witness showed no such experience, or knowledge, or

study as qualified him to give an expert opinion upon the subject. The same is true in a large measure of the witness Kilbourn.

But the verdict was wrong, and the judgment must be reversed upon the facts, as well as for this error in the admission of evidence.

The defendant showed by uncontradicted evidence that it purchased the steel of which the gun barrel was made from a manufacturer of high reputation, who furnished the same class of metal to other large firearms manufacturing companies, and who for a long time had furnished the United States government with the same material for that purpose, and who supplied the same class of material to nearly ninety per cent of the smaller gun manufacturers of the country; that before any of the metal was sent to the defendant to be manufactured into guns, it was tested to a very high degree for elastic and tensile strength; and after the barrel itself was made, the defendant subjected it to several very high tests in actual loading and firing. The parts of the gun were skillfully and carefully put together. This was all the defendant was required to do. That the gun was properly and skillfully made is proven by its continued use before it came to the hands of the plaintiff.

The witness Sweny, who was one of its first owners, and belonged to a gun club, fired the barrel that burst, as well as the other, with a standard load, as many as 250 times in one day, on several occasions. If there had been any real defect in the metal, it would have manifested itself under such severe tests.

The gun was made for black powder which at the time was in common use. Another and more highly explosive powder came into popular favor while the gun was still in existence. The defendant is not guilty of negligence because the gun was not adapted to the use of that kind of powder. The most that it was required to do was to make a gun suitable for use under the conditions existing at the time it was put on the market.

Guns are of different kinds, intended to resist greater or less force, according to their pattern and intended use. A gun entirely adapted to one use and a certain charge of powder may be entirely inadequate for a different use and a higher charge, and the manufacturer will be entirely relieved from responsibility if the gun were not used in an ordinary and reasonably to be anticipated manner.

There was much testimony upon the trial that the plaintiff loaded his shells improperly. It would appear from the quantity of powder in the shell produced upon the trial, loaded at the same time, that more than the maximum quantity of smokeless powder was used. If so, the plaintiff brought the injury upon himself.

The judgment and order should be reversed upon the law and the facts, and a new trial granted, costs to abide the event.

PARKER, P. J., SMITH, EDWARDS and CHASE, JJ., concurred.

Judgment and order denying new trial on the minutes reversed, and new trial granted, with costs to appellant to abide event.