(72 App. Div. 19.)

### DIEHL v. ROBINSON.

(Supreme Court, Appellate Division, First Department. May 9, 1902.)

1. MASTER AND SERVANT—DEATH OF SERVANT OF SUBCONTRACTOR—MASTER'S LIABILITY—INSTRUCTIONS.

Defendant's superintendent authorized certain subcontractors to use defendant's elevator car as a platform, the superintendent directing one of defendant's employés to operate it. After the elevator had passed the floor on which deceased, an employé of another subcontractor, was working, deceased began work which required him to lie on the floor, with part of his body extending into the elevator shaft, and, the subcontractors having completed the work with the elevator, it was lowered, and killed decedent. Held, that the jury might have found that defendant's servant in charge of the elevator at the time of the injury was

the servant of the subcontractors using the same, and not of defendant, and hence it was error for the trial court to refuse a requested instruction that, if the jury so found, defendant was not liable.

**2. SAME.**
Where a subcontractor was permitted to use an elevator in a building, furnished by the contractor, and operated by the contractor's servant, and there was evidence in an action for injuries sustained by the negligence of such servant in the operation of the elevator that the elevator had been placed there to facilitate the contractor's work and that of the other contractors, and was run for the accommodation of all the people in the building, the fact that such servant at the time of the injury moved the elevator car according to the directions of the subcontractors then using it did not relieve defendant from liability for such servant's negligence.

**3. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**
Where the servant of a subcontractor attempted to work where a part of his body was required to extend into an elevator shaft while the elevator in charge of the contractor's servant was being used as a platform by other subcontractors on floors above him, and he was killed by the descent of the elevator, the questions of the negligence of the contractor's servant and of the contributory negligence of the deceased were for the jury.

Appeal from trial term, New York county.

Action by Julia Diehl, as administratrix, etc., against Andrew Robinson, to recover for decedent's alleged wrongful death. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

See 71 N. Y. Supp. 752.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Herbert C. Smyth, for appellant.
Frederick W. Block, for respondent.

McLAUGHLIN, J. Action to recover damages for the death of plaintiff's intestate, alleged to have been caused by the defendant's negligence. The plaintiff recovered a judgment, from which defendant has appealed.

The defendant contracted to erect a building in the city of New York. He sublet the carpenter work to V. J. Hedden & Sons, and the iron work to J. B. & J. M. Cornell. On the morning of the accident some of the carpenters in the employ of V. J. Hedden & Sons, desiring to complete certain work which they had in charge on the fourth, fifth, and sixth floors of the building, applied to one Faddis, who was the defendant's superintendent, and had general supervision of the entire work, for permission to use the elevator car in connection with their work as a platform. Their request was granted, and Flynn, an employé of the defendant engaged in doing general work about the building, was designated by Faddis to operate the car. When the car reached the fourth floor, the intestate, an employé of J. B. & J. M. Cornell, who was there engaged in "pointing up" the ironwork of the elevator shaft, used the car in connection with the carpenters. After the carpenters had completed their work at the fourth floor, the intestate got off the car, and it was taken by the carpenters to the floors above, where it was used

for a similar purpose. It became necessary for the intestate, after the car had been taken to the floors above, in performing his work, to lie down upon the floor and reach downward, extending a portion of his body into the elevator shaft. While in this position, the carpenters having completed their work, or to such an extent that there was no further necessity for the car, Flynn lowered it, and while it was descending it struck the intestate and killed him.

It is conceded that Flynn at the time was in the general employ of the appellant, but it is urged that, notwithstanding that fact, he was in law the servant of V. J. Hedden & Sons, and therefore the defendant is not responsible for his negligence. The defendant, it will be remembered, had entered into a contract for the erection of the entire building, and, while it is true he had sublet a portion of the work, there is evidence to the effect that for the purpose of facilitating his own and the work of other contractors he had installed an elevator, which was operated by his own servants; that the elevator was run for the accommodation of all the people in the building; that this was its design and purpose; that it was furnished and operated by persons employed by him, and whose actions he controlled. Thus Flynn testified that he had taken up on the elevator "lots of workmen and men that were working all around the elevator. I would take men up who were working in and about the shaft. If a man wanted to work anywhere, he would get into the elevator, and tell me where to take him. * * * I did that right along. I took painters up on the elevator. I had painters working on top of the elevator car, and I would take the elevator up and down as they wanted to paint." Faddis also testified that the car was frequently used as a platform if it facilitated the work, and that no particular contractor had the exclusive use or control of it. There is also some evidence to the effect that on the morning of the accident special permission had been obtained from Faddis by the carpenters to use the car as a platform to do certain work which they had in charge, and that while in the performance of that work the carpenters had the exclusive control of the car, and directed its movements. If it be true that the car, at the time of the accident, was under the exclusive control of the carpenters, and it was moved only in accordance with their directions, then the defendant is not responsible for the death of the intestate.

This being the situation at the close of the case, the defendant requested the court to charge that:

"If the jury find that at the time of the accident and for some time prior thereto the elevator which injured Diehl was used exclusively by the carpenters in the performance of their work, and they were directing the movements of the car, then the defendant, Robinson, cannot be held responsible for the acts of Flynn, and the verdict should be for the defendant."

This request was declined, and an exception taken. We think the court erred in not charging the request as made. Had the facts stated in the request been found by the jury, then the defendant would not have been liable, under the rule laid down in Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285; McInerney v. Canal Co., 151 N. Y. 411, 45 N. E. 848; and Higgins v. Telegraph

Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537.   On the other hand, if the jury reached the conclusion that Flynn was performing a duty for which he was employed by the defendant, then the fact that he moved the car according to the directions of the carpenters did not relieve the defendant from liability by reason of Flynn's negligent act.   In that case the carpenters controlled the act of Flynn simply by permission of the defendant, and to that extent they represented the defendant.   The questions of Flynn's negligence and the intestate's freedom from negligence were for the jury.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.   All concur.