of section 52 of the insurance law, in the case of a new charter being adopted by the defendant society.

It is apparent, therefore, that statutory authority exists for the action of the board of directors of the defendant society in the adoption of a charter which accords to policy holders the privilege of electing a majority of the directors, thereby restricting the privilege of stockholders in that respect. Inasmuch as there was reserved to the Legislature the power to pass laws by which this change might be effected, and inasmuch as the change itself does not impair the obligation of any contract of the plaintiff, or deprive him of property without due process of law, the interlocutory judgment appealed from should be reversed, and the demurrer to the complaint sustained.

The appeal from the order granting a temporary injunction should likewise prevail, for the injunction cannot stand upon a complaint which fails to state a cause of action.

(109 App. Div. 81)

### WIEBER v. NEW. YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. November 24, 1905.)

RAILROADS—OPERATION OF TRAINS—DUTY TO GIVE WARNING.

> A truck driver was sent by his employer to a steamship pier with a load of freight. While unloading his truck at the pier, he was injured by his horses taking fright at a noise made by the cars of a railroad on the tracks of the pier. The pier was under the exclusive control of the steamship company, and trucks and trains while on the pier were there with the consent of the steamship company, and were operated in obedience to the direction and control of its agents. *Held*, that the railroad was not bound to give the truckman notice of the movements of its train upon the pier.
>
> Patterson and Clarke, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Charles Wieber against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, CLARKE, and INGRAHAM, JJ.

Robert A. Kutschbock, for appellant.
Don R. Almy, for respondent.

McLAUGHLIN, J. This action was brought to recover damages for personal injuries alleged to have been sustained by reason of defendant's negligence. Plaintiff had a recovery, and defendant appeals.

On the 14th of February, 1902, the plaintiff was injured while unloading a truck by the sudden starting of the horses attached to it. It is alleged that the sudden starting of the horses was caused by the approach of an engine and train of cars belonging to the defendant. The negligence charged was the failure of the defendant to give plaintiff notice of such approach. At the time of the accident plaintiff was, and for some time immediately prior thereto had been, employed as a driver for one Smith, who did a general trucking business. On the day in

question he was directed to take a load of radiators to the White Star Line pier in the city of New York, known as Pier No. 48, North river. This pier extends from West street into the Hudson river in an easterly and westerly direction several hundred feet, and is about 150 feet in width. The defendant maintains a railroad track in West street, which is immediately in front of the pier, and from this track there extends a switch track, which runs upon and parallel with the side of the pier for a short distance, then turns to the north around the pier office, which is in the center of the pier, then turns back again, and continues as a straight track to the end of the pier, making two curves as it turns around the office of the steamship company. The pier is under the control of the steamship company. The only business conducted upon it is its business, consisting of both freight and passenger, and it regulates and controls the access to the pier both of vehicles and trains. The northern entrance to the pier was used for teams and the southern entrance for trains. At both entrances gates were maintained, which made it impossible to go upon the pier until consent had been obtained from the agents or representatives of the steamship company and the gates were opened. After a vehicle or train had passed through the gates, and while on the pier, it was subject to the direction and control of such agents or representatives. Prior to the day plaintiff was injured, he had been upon this pier many times, and was familiar with the method of there delivering freight. On the day of the accident, a, representative of the steamship company, and one having authority to authorize trucks to enter upon the pier, met the plaintiff at the gate where vehicles entered, and directed him to go to a certain hatchway some 200 feet away, and there unload his truck. He did as directed, and while in the act of unloading, several cars belonging to the defendant, loaded with freight for the steamship company, were backed from the tracks in Center street onto the switch to the gate leading onto the pier and stopped. An agent of the steamship company directed that the gate be opened, which was done, and the train then backed onto the pier, and the conductor in charge of the train was directed by one Donnelly, the agent of the steamship company, to take it to a certain place. This was done, and after some of the cars had been unloaded, Donnelly directed that the train be moved to another place, for the purpose of unloading the balance, and while making the second movement it was necessary for the cars to pass around one of the curves referred to, in doing which the cars bumped together, making considerable noise, which frightened the horses in charge of the plaintiff, causing them to suddenly start, thereby throwing some of the radiators onto him, and causing the injuries of which he complained.

No testimony was given at the trial that the track was in a defective condition or negligently constructed in plan, curves, or otherwise. The testimony was directed solely to establishing the defendant's negligence, which consisted in the operation of the train, viz., in its failure to give the plaintiff notice of the approach of the train.

I am of the opinion, upon the facts stated, the defendant was not liable. It may be conceded that the train was negligently operated, and that the plaintiff should have been warned of its approach, but if such

concession be made, it does not follow that the negligent act was imputable to the defendant, or that it could be held responsible for it. The testimony establishes beyond dispute that the steamship company, the lessee of the pier, assumed and exercised exclusive authority as to the admission of vehicles and trains to the pier, and also exclusive direction as to their movements when they were once upon it. It also establishes that the movement of the defendant's train was made pursuant to instructions of the representative of the steamship company, and, this being so, the defendant was under no obligation to give the plaintiff notice of the approach of the train. A person injured by the negligent act of another must pursue the person causing the injury. The case of master and servant is an exception to the general rule. There the negligence of the latter is imputable to the master where the servant, in doing the act which causes the injury, is acting within the scope of his employment. Engel v. Eureka Club, 137 N. Y. 100, 32 N. E. 1052, 33 Am. St. Rep. 692. Here no such relation existed, and the plaintiff, to be entitled to recover, was bound to prove that his injuries were caused by the negligent act of the defendant; and this, as it seems to me, he did not do. The fact that the conductor and engineer in charge of the train were the servants of the defendant does not make it liable unless at the time such persons were under its control and management. As said by Judge O'Brien in Higgins v. Western Union Tel. Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537:

"The fact that the party to whose wrongful or negligent act an injury may be traced was at the time in the general employment and pay of another person does not necessarily make the latter the master, and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct. Servants who are employed and paid by one person may, nevertheless, be ad hoc the servants of another in a particular transaction, and that, too, when their general employer is interested in the work."

Applying that rule to the conceded facts in this case, I am unable to see how a recovery can be sustained. As already said, the train could not enter upon the pier until the agents or representatives of the steamship company had opened the gate, and given permission for it to do so; and then when it was upon the pier it could only be moved as directed by such agents or representatives. The business there transacted was the business of the steamship company, and no one else.

The case in principle cannot be distinguished from McInerney v. Delaware & Hudson Canal Company, 151 N. Y. 411, 45 N. E. 848. There the plaintiff was in the employ of one Willard, the proprietor of a lumber yard into which a switch had been constructed, extending from the defendant's tracks. When Willard desired to move any of the cars loaded with lumber standing upon the tracks in his yard, he sent word to the defendant, and a switch engine, with a crew, would go to the yard for that purpose. It was customary for the engine to stop at the entrance to the yard, and then word would be sent to Willard that they were ready to do his work. This course of procedure was pursued on the day plaintiff was injured. Willard was notified, and under his direction the engine entered upon the track in the yard for the purpose of coupling the cars and drawing them out. The plain-

tiff and a fellow workman were between two of the cars, engaged in moving one of them by hand, at the time the engine was backed down, and the cars were forced together and plaintiff injured. It was held that the railroad company was not liable; that Willard was the master of the persons engaged in moving the cars, and not the defendant; the court saying:

"It would doubtless have been a careless and negligent act for the engine crew, upon being sent for, to have entered the yard of the plaintiff, and begun the work of coupling and moving cars without notice to Willard or his representative; but they discharged their whole duty to plaintiff and to all the regular employés in the lumber yard when they notified Willard on the day of the accident of their readiness to proceed with his work, and thereupon entered the yard with the engine, and coupled and moved the cars in obedience to his orders."

See, also, Hallett v. New York Central & Hudson River R. Co., 167 N. Y. 543, 60 N. E. 653, and Diehl v. Robinson, 72 App. Div. 19, 76 N. Y. Supp. 252.

In the present case the train was backed onto the pier by direction of the steamship company, and it was then moved from one point to another by the same direction. Every movement of the train while on the pier was by an order of the representative of the steamship company. Under such circumstances, the persons engaged in moving the train were the servants of the steamship company, and not of the defendant, and, being their servants, defendant cannot be held liable for their negligence, if such existed.

The judgment and order appealed from, therefore, should be reversed, and a new trial ordered, with costs to appellant to abide event.

PATTERSON and CLARKE, JJ., dissent.

INGRAHAM, J. I concur with Mr. Justice McLAUGHLIN in the reversal of this judgment, upon the ground that the record discloses no evidence to justify a finding that the negligence of the defendant was the proximate cause of the accident which resulted in the injury to the plaintiff. The pier upon which the plaintiff was employed was under the exclusive control of the White Star Steamship Company. Its employés had control of the method of unloading trucks or cars which brought merchandise to be shipped upon its steamships. The railroad tracks upon this pier were as much under the control of the steamship company as was the rest of the pier. When the plaintiff brought this load to be delivered to the steamship company, he was directed by its employés as to where he should unload his truck, and, following their directions, he proceeded with his work. When the defendant brought these cars to be unloaded for the same purpose, the steamship company's employés directed the defendant's employés as to where their cars should be unloaded. The relation of the defendant to its cars while on the dock was not different from the relation of the plaintiff to his horses and truck. Both the plaintiff and the employés of the defendant were unloading from their respective vehicles property to be shipped by the steamship company, and when the steamship company directed the defendant's employés to back its cars over

the track to be unloaded, the steamship company's employés were in charge of, and had control of, these cars, and were responsible for their management. I should not dispute the proposition that if in backing these cars upon the dock the employés of the defendant had negligently collided with the plaintiff's truck and injured him, the defendant would be responsible. Nothing of the kind, however, happened. In backing the cars around the curve in the track upon the steamship company's premises, the cars came together, making a noise, which frightened the plaintiff's horses. There is, however, no evidence to show that the employés of the defendant were negligent in the management of its cars, but it would seem that this crashing together was caused by the form of the curve in the track. The primary cause of the noise, therefore, was the curve in the track, for which the defendant was not responsible. When the cars caught upon this curve, they were some distance from the plaintiff's truck, and between it there was a pile of freight, so that neither the defendant's employés could see the plaintiff's truck nor the plaintiff see the approaching cars. There was no collision, and no danger of a collision, as the plaintiff's truck was not upon the track. It is said, however, that defendant was negligent in not warning those upon the pier of the approach of the cars; but there is nothing to show that such a warning was necessary, so long as the track over which the defendant's cars were being pushed was clear, and there was no reason for the defendant's employés to suppose that the noise caused by these cars being pushed upon the track would frighten the truck horses so as to cause an injury. The duty of the defendant's employés was to use care in pushing these cars upon the tracks laid down upon the pier. There was no duty devolving upon them to warn all the other people upon the pier that the cars were approaching, so long as the tracks were clear, and there was no one in a situation where he could be injured by the passage of the cars over the tracks. That these horses could have been frightened by such a noise was not one of the results of moving the train over this track that the defendant's employés could have anticipated, and certainly the fact that the employés of the defendant did not warn all of the drivers of trucks upon the pier that the cars were approaching when the track itself was clear was no proof of a negligent operation of the cars by the defendant's employés which made the defendant liable for such an accident as here happened. It has never been held that a railroad company is responsible for the effect of a noise made in the ordinary operation of its cars upon horses in the neighborhood. Unless the defendant, as distinguished from the steamship company, had imposed upon it a duty to warn all persons on the pier when the car was approaching, there is no ground for saying that this accident was the result of its negligence.

I think, therefore, the complaint should have been dismissed.

O'BRIEN, P. J., concurs.